PEOPLE v SNYDER

Docket No. 111960. Decided May 10, 2000. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgments of the Court of Appeals and the circuit court and remanded the case to the circuit court for a new trial.

William D. Snyder was convicted by a jury in the Montcalm Circuit Court of assault with intent to murder and possession of a firearm during the commission of a felony arising from a shooting. During trial, the court, Charles W. Simon, Jr., J., excluded testimony offered by the defense in which a witness would have testified that the victim told him the shooting was accidental. The Court of Appeals, GRIFFIN, P.J., and GRIBBS, J. (WAHLS, J., dissenting), affirmed in an unpublished opinion per curiam (Docket No. 195666). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the circuit court to permit defense counsel to question the witness regarding the matter foreclosed by the trial court. After a hearing before David A. Hoort, J., the defendant seeks leave to appeal.

In a unanimous opinion per curiam, the Supreme Court held:

The exclusion of the impeachment evidence was error, and it was not harmless.

1. Defense counsel adequately presented and preserved in the trial court the issue whether the shooting was an accident. The leading question contained its own presumptive answer, and counsel had laid the groundwork by earlier obtaining a corresponding denial from the complainant. Further, counsel was attempting to explain the nature and content of the proposed impeachment when he was cut off by the circuit court.

2. It is not necessary to determine whether the error in question was of constitutional magnitude because reversal is required even under the standard set forth in People v Lukity, 460 Mich 484 (1999), for assessing preserved, nonconstitutional error. Under Lukity, a defendant has the burden of establishing that it is more probable than not that the error in question undermined the reliability of the verdict, thereby making the error outcome determina-

tive. In this case, there is no question that the error was outcome determinative under *Lukity*.

Reversed and remanded.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Andrea Krause*, Prosecuting Attorney, *J. Ronald Kaplansky*, Assistant Attorney General, for the people.

*Frederick J. Taylor* for the defendant-appellant.

PER CURIAM. A jury convicted the defendant of assault with intent to murder and felony-firearm. The Court of Appeals affirmed, over the dissent of a judge who believed that the circuit court erred in excluding impeachment testimony. We agree with the dissenting judge in the Court of Appeals, and therefore reverse and remand this case to the circuit court for a new trial.

I

Defendant William D. Snyder shot a woman on November 13, 1994. She testified that they had argued, and that the defendant had threatened to kill her. The defendant called several witnesses at trial, but did not himself testify.

During cross-examination, the complainant denied that she told a man named Daniel Rambadt that the shooting had been an accident. If he were to testify in that manner, she said, it would be a lie.

Defense counsel then called Mr. Rambadt, and this exchange followed:

> *Q.* What did she tell you?
> [*Assistant Prosecutor*]: Objection; hearsay.
> *The Court*: Objection sustained.

*A.* She told me it was . . .

[*Assistant Prosecutor*]: Objection.

*Q.* Hold on.

*The Court*: Do not answer the question.

*A.* OK.

*The Court*: The objection's been sustained.

*A.* OK.

[*Defense Counsel*] continues:

*Q.* Did she indicate to you that this had been an accident?

[*Assistant Prosecutor*]: Objection; hearsay.

*The Court*: Objection sustained.

[*Defense Counsel*]: I'm offering it to impeach the testimony of the previous witness where she indicated that she told Mr. Rambadt . . .

*The Court*: You cannot ask a hearsay question. The jury will disregard the remarks of counsel with regard to that.

At the conclusion of the trial, the jury convicted the defendant, as charged, of assault with intent to murder and possession of a firearm during the commission of a felony.[1] MCL 750.83, 750.227b; MSA 28.278, 28.424(2).

The defendant had several prior felony convictions, and so the circuit court imposed an enhanced sentence. MCL 769.12; MSA 28.1084. He had also been on parole at the time of the shooting, so his 25- to 50-year sentence for assault was consecutive to the remaining portion of the sentence for his earlier

---

[1] The defendant was later convicted of a separate count of being a felon in possession of a firearm. MCL 750.224f; MSA 28.421(6). This conviction was affirmed by the Court of Appeals. Unpublished opinion per curiam of the Court of Appeals, issued March 9, 1999, reh den May 10, 1999 (Docket No. 200325).

offense.[2] The defendant also received the consecutive two-year sentence for felony-firearm.

The Court of Appeals affirmed, over the dissent of the late Judge WAHLS.[3]

The defendant applied to this Court for leave to appeal, and we remanded the case to circuit court "for an evidentiary hearing at which defense counsel can ask witness Rambadt the questions that were foreclosed by the disputed ruling of the circuit court . . . ."[4] We retained jurisdiction.

On remand, Mr. Rambadt testified as follows:

> *Q.* All right. Did she say that was an accident?
>
> *A.* Yeah, she did. She told me right out it was an accident.
>
> *Q.* Did she say anything to indicate to you—and we're just talking a couple of months after this incident supposedly occurred, right? Shortly after the incident occurred?
>
> *A.* Yeah, it was shortly after.
>
> *Q.* Did she say anything or act in any way that would lead you to believe that she was upset in any manner with Bill Snyder?
>
> *A.* No.
>
> *Q.* Did she say or do anything that would have led you to believe that she thought Bill had done something to intentionally cause her injury?
>
> *A.* No.
>
> *Q.* She said it was an accident?
>
> *A.* She said it was an accident.
>
> [*Prosecuting Attorney*]: Asked and answered, your Honor.

---

[2] MCL 768.7a(2); MSA 28.1030(1)(2).

[3] Unpublished opinion per curiam of the Court of Appeals, issued March 31, 1998 (Docket No. 195666).

[4] Unpublished order of the Supreme Court, entered November 30, 1999 (Docket No. 111960).

*The Court*: Sustained.

*By* [*Defense Counsel*]:

[*Q.*] She said it was her fault?

[*Prosecuting Attorney*]: Asked and answered.

*The Court*: Overruled.

*The Witness*: She said it was an accident, you know, I mean, an accident.

This Court's remand order permitted the prosecuting attorney to cross-examine Mr. Rambadt, but he did not alter his testimony regarding the victim's statement to him.

II

Among the issues that the defendant raised in the Court of Appeals was a claim that the circuit court erred in excluding the testimony in which Mr. Rambadt would have testified that the victim told him that the shooting was accidental. The Court of Appeals said that the defendant "did not preserve an objection to the excluded evidence either by arguing the nonhearsay nature of the evidence or by making an offer of proof to the trial court." It indicated that such an offer was necessary because "[t]he substance of the evidence sought to be admitted was not 'apparent from the context within which the questions were asked.' MRE 103(a)(2)."

The Court then went on to explain its conclusion that "the error, if any, was harmless."

In dissent, Judge WAHLS disagreed with the majority's conclusions that the issue was not preserved and that any error was harmless. He wrote:

An offer of proof is not necessary to preserve an evidentiary issue for review if "the substance of the evi-

dence . . . was apparent from the context within which questions were asked." MRE 103(a)(2). Here, defense counsel asked defense witness Daniel Rambadt "Did [the complainant] indicate to you that this had been an accident?" The prosecutor then objected on hearsay grounds, and the trial court sustained the objection. In my opinion, the substance of Rambadt's testimony on this point is readily apparent from the context of defense counsel's yes-or-no question. After all, Rambadt was a defense witness who was called solely for the purpose of impeaching the complainant's credibility. I cannot imagine a question that would make the substance of any evidence more apparent than a simple yes-or-no question. Thus, I would conclude that this issue was preserved. See *People v Morton*, 213 Mich App 331, 335; 539 NW2d 771 (1995).

Even if this issue were not properly preserved, I would conclude that the trial court's error in excluding this testimony was plain error requiring reversal. The prosecution's case rested almost entirely on the testimony of the complainant. The complainant's prior inconsistent statement on an essential issue would have called into question the veracity of all of her testimony. Under these circumstances, I cannot conclude that the trial court's error was harmless. See *People v Adamski*, 198 Mich App 133, 140-141; 497 NW2d 546 (1993). Therefore, I would reverse defendant's convictions and remand for a new trial.

III

A

We agree with Judge WAHLS that defense counsel adequately presented and preserved this issue in the circuit court. The leading question contained its own presumptive answer, and counsel had laid the groundwork by earlier obtaining a corresponding denial from the complainant. In this respect, the testimony provided on remand was in accord with what one rea-

sonably would anticipate after reviewing the previously existing record. Further, counsel was attempting to explain the nature and content of the proposed impeachment when he was cut off by the circuit court.

B

We further agree with Judge WAHLS that exclusion of this impeachment evidence was error.[5] As he observed, the prosecution's case rested almost entirely on the testimony of the complainant. Her credibility, and that of the defendant, were central concerns as the jury found the facts in this case. Testimony that the complainant later characterized the shooting as an accident would have significantly aided the jury in assessing the complainant's credibility. As we said in *People v Brooks*, 453 Mich 511, 520; 557 NW2d 106 (1996), it is not our task to determine who is telling the truth. Rather, our task is to determine whether the jury was given the opportunity to hear the admissible evidence it needed to make its decision.

C

Having determined that the circuit court erred in excluding Mr. Rambadt's testimony, we must next determine whether this properly preserved error was harmless. In the ordinary case, the applicable stan-

---

[5] The standard of appellate review for determining whether an evidentiary ruling is error is set forth in *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). There, we both explained the general standard (abuse of discretion) and cautioned that some evidentiary issues include questions of law (to be determined de novo).

dard of review depends on whether the error in question was nonconstitutional or constitutional in nature. See *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). Here, however, we need not determine whether the error in question was of constitutional magnitude because reversal is required even under the standard set forth in *People v Lukity*, 460 Mich 484, 493-496; 596 NW2d 607 (1999), for assessing preserved, nonconstitutional error. Under *Lukity*, a defendant has the burden of establishing that it is more probable than not that the error in question "undermine[d] the reliability of the verdict," thereby making the error "outcome determinative." *Id.* at 495-496. In this case, there is no question that the error was outcome determinative under *Lukity*.

This conclusion is based upon "an examination of the entire cause," as required by MCL 769.26; MSA 28.1096. In this regard, we note that the assistant prosecutor took advantage of the circuit court's erroneous ruling during her closing argument. She told the jury "there has been no testimony offered to suggest anything other than an intentional cold bloodied [sic] act by the defendant." During rebuttal argument, she criticized defense counsel for asking the jury to believe things for which there was "no proof, no testimony, no hard evidence." She characterized the theory of accident as "sheer theory, sheer speculation." With the defendant having been denied the opportunity to present impeachment evidence that the complainant herself told someone that the shooting was accidental, it is significant that the rebuttal argument also included this:

> He wants to say that the gun accidentally discharged. Says who? [The complainant] told you there wasn't any-

thing accidental about him picking the gun, pointing at her head, and pulling the trigger. Nothing accidentally could even be inferred from that. And there was no other testimony to support an accidental discharge of that weapon: no other testimony.

There are other evidentiary bases for our conclusion that the error is not harmless. The complainant's own son characterized her reputation for truthfulness as "[s]haky sometimes." Asked to elaborate, he said, "Well, like any other person, you know, you bend the truth for your will, but she's told some lies." There was also testimony that the complainant and the defendant were seen apparently enjoying each other's company in a tavern after the shooting.

Therefore, we are satisfied that the evidentiary error in this case was not harmless under the *Lukity* standard for assessing preserved, nonconstitutional error. In light of that fact, there is no need to determine whether the evidentiary error was constitutional in nature.

D

For these reasons, we reverse the judgments of the Court of Appeals and the circuit court, and we remand this case to the circuit court for a new trial. MCR 7.302(F)(1).

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.