**Michigan Supreme Court**
**Lansing, Michigan 48909**

_____

_____

# Opinion

Chief Justice
Elizabeth A. Weaver

Justices
Michael F. Cavanagh
Marilyn Kelly
Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED DECEMBER 27, 2000**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                No. 115939

RUDOLFO G. RODRIGUEZ, JR.,

    Defendant-Appellant.

_____

PER CURIAM

    The defendant has been convicted of tax evasion, for failure to pay use tax on several motor vehicles. The Court of Appeals affirmed. We reverse the judgments of the Court of Appeals and the circuit court because the circuit court failed to instruct the jury regarding a statutory exemption to the tax.

I

The defendant lived in Hudson and owned carpeting stores in Adrian and Hillsdale. He also bought and sold used vehicles. He knew an automobile dealer in Texas who allowed him to use some of that dealership's temporary permits. While there was no fixed pattern to his purchases and sales, the defendant typically would buy a vehicle at auction in Ohio, place the Texas permit on it, and bring it back to Michigan. Here, he would repair the vehicle, and then sell it, again at auction.

A tax investigation led to the present charges. The defendant faced six felony counts of evading the use tax[1] owed on six vehicles. MCL 205.27(2); MSA 7.657(27)(2). They included (a) a 1985 one-ton Ford cube van that was painted with the name of the defendant's carpet business, (b) a 1988 Pontiac Bonneville that was titled in the name of the defendant's wife and that she sometimes drove, (c) a 1988 Chevrolet van that police found hooked to a trailer that contained carpeting for the defendant's business, (d) a 1978 Jaguar, (e) a 1984 Mazda 626, and (f) a 1985 Chevrolet Blazer.

---

[1] The Use Tax Act is MCL 205.91 *et seq.*, MSA 7.555(1) *et seq.* The use tax is designed to complement the sales tax. It applies to certain personal property transactions in which the seller does not collect a sales tax on behalf of the state. The sale of a motor vehicle by one private individual to another is one of the most common circumstances to which the use tax applies. The purchaser must pay the tax——six percent, the same the sales tax——in order to obtain a certificate of title. The tax is imposed by MCL 205.93(1); MSA 7.555(3)(1). Further, the Motor Vehicle Code requires payment of the use tax as a condition of obtaining a vehicle title. MCL 257.814; MSA 9.2514.

This case was tried in January 1997. The jury's conclusion was that the defendant was guilty of one felony count, for evading the use tax on the Ford cube van. The jurors also found him guilty of misdemeanor counts for evading the tax on the Bonneville and the Chevy van. MCL 205.27(4); MSA 7.657(27)(4). They acquitted him of the charges pertaining to the other three vehicles.

The defendant was fined and placed on probation. He appealed his convictions, but the Court of Appeals affirmed. 236 Mich App 568; 601 NW2d 134 (1999).[2] Judge SMOLENSKI dissented.

The defendant has filed a delayed application for leave to appeal in this Court.

II

The defendant raises three issues in this Court. Two have merit, and require that we remand this case to the circuit court for a new trial.

A

The defendant's theory of the case was that he acquired the vehicles with the intent to hold them just long enough to do necessary repairs and then to resell them. He therefore believed himself to fall within MCL 205.94(c); MSA 7.555(4)(c), which exempts from the use tax "[p]roperty

---

[2] Reh den, unpublished order entered October 7, 1999 (Docket No. 202538).

3

purchased for resale."[3]

The defendant asked the circuit court to instruct the jury regarding the exemption stated in MCL 205.94(c); MSA 7.555(4)(c).[4]  The court refused the request, agreeing with the Attorney General[5] that the "resale" exemption applied only to persons who held Michigan dealer licenses.  The court came to this conclusion on the basis of the language in the first

---

[3]  MCL 205.94; MSA 7.555(4) provides that "[t]he tax levied . . . does not apply" to several categories of property.  One is described in subsection (c):

> Property purchased for resale, demonstration purposes, or lending or leasing to a public or parochial school offering a course in automobile driving except that a vehicle purchased by the school shall be certified for driving education and shall not be reassigned for personal use by the school's administrative personnel.  For a dealer selling a new car or truck, exemption for demonstration purposes shall be determined by the number of new cars and trucks sold during the current calendar year or the immediately preceding year without regard to specific make or style according to the following schedule of 0 to 25, 2 units; 26 to 100, 7 units; 101 to 500, 20 units; 501 or more, 25 units; but not to exceed 25 cars and trucks in 1 calendar year for demonstration purposes.  Property purchased for resale includes promotional merchandise transferred pursuant to a redemption offer to a person located outside this state or any packaging material, other than promotional merchandise, acquired for use in fulfilling a redemption offer or rebate to a person located outside this state.

Other exemptions are stated in MCL 205.93(3); MSA 7.555(3)(3) and MCL 205.94; MSA 7.555(4).

[4]  Each side submitted a set of proposed jury instructions.  The defendants' included an instruction that "the defendant is exempted from the use tax if the vehicle was purchased for resale or for demonstration purposes."

[5] The Attorney General prosecuted this case.

4

sentence of a different subsection, MCL 205.93(2); MSA 7.555(3)(2).[6] That sentence provides:

> The tax imposed by this section for the privilege of using, storing, or consuming a vehicle, ORV, mobile home, aircraft, snowmobile, or watercraft shall be collected before the transfer of the vehicle, ORV, mobile home, aircraft, snowmobile, or watercraft, except a transfer to a licensed dealer or retailer for purposes of resale that arises by reason of a transaction made by a person who does not transfer vehicles, ORVs, mobile homes, aircraft, snowmobiles, or watercraft in the ordinary course of his or her business done in this state.

---

[6]
> The tax imposed by this section for the privilege of using, storing, or consuming a vehicle, ORV, mobile home, aircraft, snowmobile, or watercraft shall be collected before the transfer of the vehicle, ORV, mobile home, aircraft, snowmobile, or watercraft, except a transfer to a licensed dealer or retailer for purposes of resale that arises by reason of a transaction made by a person who does not transfer vehicles, ORVs, mobile homes, aircraft, snowmobiles, or watercraft in the ordinary course of his or her business done in this state. The tax on a vehicle, ORV, snowmobile, and watercraft shall be collected by the secretary of state before the transfer of the vehicle, ORV, snowmobile, or watercraft registration. The tax on a mobile home shall be collected by department of commerce, mobile home commission, or its agent before the transfer of the certificate of title. The tax on an aircraft shall be collected by the department of treasury. Notwithstanding any limitation contained in [MCL 205.92; MSA 7.555(2)], the price tax base of any vehicle, ORV, mobile home, aircraft, snowmobile, or watercraft subject to taxation under this act shall be not less than its retail dollar value at the time of acquisition as fixed pursuant to rules promulgated by the department.

This is the language of the statute as it read at the time of these events. In 1999 PA 117, the Legislature changed the third sentence, so that it names the Department of Consumer and Industry Services rather than the Department of Commerce.

5

The court's refusal to give the requested instruction limited defense counsel to arguing that the defendant had not *intended* to evade the use tax.

The Court of Appeals majority agreed with the circuit court that the instruction need not be given. It said that the exemption stated in MCL 205.94(c); MSA 7.555(4)(c) was inapplicable to this case because MCL 205.93(2); MSA 7.555(3)(2) is more specific, and thus controls. 236 Mich App 572.

This analysis failed to persuade the dissenting judge in the Court of Appeals, who wrote:

> I disagree with the majority's conclusion that defendant could not take advantage of the resale exemption in MCL 205.94(c); MSA 7.555(4)(c) . . . because the more specific section for vehicle transfers, MCL 205.93(2); MSA 7.555(3)(2) . . . applied. On the contrary, I conclude that [MCL 205.94(c); MSA 7.555(4)(c)], which creates a separate tax exemption for property purchased for resale, specifically applies to defendant's transactions. I further conclude that the trial court erred in failing to instruct the jury that defendant was exempt from paying use tax if he intended to resell the vehicles pursuant to the specific exemption set forth in [MCL 205.94(c); MSA 7.555(4)(c)]. [236 Mich App 574.]

The meaning of these statutory provisions "is a question of law that we decide de novo. *People v Burgenmeyer*, 461 Mich 431, 436, n 10; 606 NW2d 645 (2000); *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999)." *In re Investigation of 1999 Riots*, 463 Mich 378, 383; 617 NW2d 310 (2000).

We agree with the dissenting judge. In MCL 205.94(c); MSA 7.555(4)(c), the Legislature provided in clear and

unambiguous language an exemption for property purchased for resale. The reliance by the Court of Appeals majority on MCL 205.93(2); MSA 7.555(3)(2) was misplaced. The latter provision spells out such details as the time of payment and the identity of the payee.

The Attorney General argues that the MCL 205.94(c); MSA 7.555(4)(c) and MCL 205.93(2); MSA 7.555(3)(2) "are complements of one another and are intended to provide the same exemption for licenced dealers who purchase vehicles for the purpose of resale." Otherwise, "a person could buy vehicles out of the state, tax-free, and bring them into Michigan and never pay taxes on the vehicles in Michigan, arguing that he intended to resell it eventually, perhaps 50,000 or 100,000 miles later." Two responses are apparent. First, in enacting the language of MCL 205.94(c); MSA 7.555(4)(c), the Legislature did not restrict the "purchased for resale" exemption to dealers. Second, the plain meaning of the phrase "purchased *for resale*" conveys a legislative intent inconsistent with purchase for another purpose.

With regard to transactions exempt from the use tax, Judge SMOLENSKI is correct that MCL 205.94(c); MSA 7.555(4)(c) provides the specific and controlling language. Under that provision, the defendant was—if a properly instructed jury were to believe his version of the facts—exempt from the tax.

B

The Legislature has mandated that a trial court "instruct

7

the jury as to the law applicable to the case." MCL 768.29; MSA 28.1052. The court's obligation to instruct on a proposed defense was described in *People v Mills*, 450 Mich 61, 80-81; 537 NW2d 909 (1995):[7]

> A criminal defendant has the right to have a properly instructed jury consider the evidence against him. *People v Vaughn*, 447 Mich 217; 524 NW2d 217 (1994); *People v Lewis*, 91 Mich App 542; 283 NW2d 790 (1979). However, a trial court is not required to present an instruction of the defendant's theory to the jury unless the defendant makes such a request. *People v Wilson*, 122 Mich App 1, 3; 329 NW2d 513 (1982). Further, when a jury instruction is requested on any theories or defenses and is supported by evidence, it must be given to the jury by the trial judge. *People v Rone (On Remand)*, 101 Mich App 811; 300 NW2d 705 (1980). A trial court is required to give a requested instruction, except where the theory is not supported by evidence. *People v Stubbs*, 99 Mich App 643; 298 NW2d 612 (1980); *People v Staph*, 155 Mich App 491; 400 NW2d 656 (1986).

In the present case, the statutory exemption would apply if the evidence introduced by the defendant were believed by the jury, and thus the circuit court erred in failing to give the requested instruction. There remains, however, the question whether this error was harmless.

C

A chart outlining the principles governing an inquiry into harmless error is set forth in *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). As one can readily see from that page of *Carines*, nonconstitutional preserved error is evaluated under the standard set forth in *People v Lukity*, 460

---

[7] Judgment order modified 450 Mich 1212 (1995).

Mich 484; 596 NW2d 607 (1999). In *Lukity*, we quoted our statement in *People v Mateo*, 453 Mich 203, 211; 551 NW2d 891 (1996), that MCL 769.26; MSA 28.1096 "should be viewed as a legislative directive to presume the validity of verdicts." In light of that presumption, we said in *Lukity*:

> [MCL 769.26; MSA 28.1096], with its rebuttable presumption, clearly places the burden on the defendant to demonstrate that a preserved, nonconstitutional error resulted in a miscarriage of justice. [460 Mich 493-494.]

and

> [T]he bottom line is that [MCL 769.26; MSA 28.1096] presumes that a preserved, nonconstitutional error is not a ground for reversal unless "after an examination of the entire cause, it shall affirmatively appear" that it is more probable than not that the error was outcome determinative. [460 Mich 495-496.]

These principles were further refined in *People v Snyder*, 462 Mich 38, 45; 605 NW2d 831 (2000), and *People v Elston*, 462 Mich 751-766; 614 NW2d 595 (2000). As we explained in Elston:

> In order to overcome the presumption that a preserved nonconstitutional error is harmless, a defendant must persuade the reviewing court that it is more probable than not that the error in question was outcome determinative. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). An error is deemed to have been "outcome determinative" if it undermined the reliability of the verdict. See *People v Snyder*, 462 Mich 38, 45; 605 NW2d 831 (2000), citing *Lukity*, *supra* at 495-496. In making this determination, the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence. See *Lukity*, *supra* at 495; *People v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996). [462 Mich 766.]

Under the standard set forth in *Lukity* and Elston, the

9

error in this case was not harmless.  The jury received no instruction on an exception to the use tax statute that was crucial to the defendant's defense and was clearly supported by the evidence.  There is no question that the error undermined the reliability of the verdict, and thus was "outcome-determinative" under *Lukity* and *Elston*.

III

The Assistant Attorney General objected during defense counsel's closing argument.  In the course of ruling on the objection, the circuit court (referring to the defendant) told the jury, "he's subject to the tax."  That statement was made during the following discussion by the attorneys and the court:

> [*Defense Counsel*]:  . . .  The unrefuted testimony is that every single one of these other vehicles at some point—nobody knows for sure when or where—were sold at auction, either in this State or in another state, and as long as it is a dealer-to-dealer transaction, the sales use [sic] tax doesn't apply.  That's the purpose of being a dealership, and, therefore, it's when the ultimate consumer—that's what a sales tax is all about. It's when the ultimate consumer gets it, and that's why it's on the cash register tape if there's a sales tax on it.  When it goes from wholesale to retail, that's the point at which the duty to pay taxes applies.

> [*Assistant Attorney General*]: Objection, Your Honor.  It's—that part I'm not going to say that's part [sic] a misstatement of the law.  It's not the statement of law that's applicable here because of the Defendant's lack of being a dealer, and, so, therefore, it . . .

> [*Defense Counsel*]:  That's his argument, Judge.

10

[*Assistant Attorney General*]: . . . it shouldn't go to this jury.

*The Court*: No, that—that's true. That's not applicable to a nondealer, and *Defendant is a nondealer*.

[*Defense Counsel*]: I understand, Judge, but I have a—I have argued, and there is no proof from any witness for the Prosecution that his dealer—that his Texas dealer tags were invalid in Michigan. Nobody testified . . .

*The Court*: He's not a Michigan dealer.

[*Defense Counsel*]: I understand he's . . .

*The Court*: Counsel, I've ruled.

[*Defense Counsel*]: I understand he's not a Michigan dealer.

*The Court*: He's not a Michigan dealer, *and that means he's subject to the tax*.

[*Defense Counsel*]: Judge, that . . .

*The Court*: Counsel, I have ruled.

[*Defense Counsel*]: Your Honor, I believe that that is wrong.

*The Court*: You may believe it's wrong all you want, but it is the law of this State, and you're to follow it in your argument. [Emphasis supplied.]

At the next recess, defense counsel moved for a mistrial. One of his several grounds was that the court's statement that the defendant was subject to the tax "is a direct violation of the province of the Court and the jury and is, in effect, directing a verdict of guilt." The court denied the motion.

The Court of Appeals majority likewise denied relief, interpeting the circuit court's statement as an instruction

11

regarding the proper application of MCL 205.93(2); MSA 7.555(3)(2). 236 Mich App 573. The majority added, "we do not find that the trial court's instruction to the jury that the exemption did not apply amounted to a directed verdict of guilt." 236 Mich App 574.

Again, we find the dissent to be more persuasive. Judge SMOLENSKI wrote:

> I also disagree with the majority's interpretation of the trial court's statement in the presence of the jury that defendant was "not a Michigan dealer, and that means he's subject to the tax," as an instruction to the jury that the exception set forth in [MCL 205.93(2); MSA 7.555(3)(2)] did not apply because defendant was not a Michigan dealer. "There is a difference between commenting on the evidence and making a finding of fact for the jury." *People v Reed*, 393 Mich 342, 351; 224 NW2d 867 (1975). When the court made this statement, it invaded the province of the jury. *Id*. at 351. Furthermore, if the trial court's statement is construed to be an instruction, then the court committed an error requiring reversal because it instructed the jury that an essential element of the criminal offense exists as a matter of law. *Id*. at 349-351; *People v Tice*, 220 Mich App 47, 54; 558 NW2d 245 (1996). [236 Mich App 574-575.]

Because the instructional error discussed in part II of this opinion compels us to reverse the defendant's convictions and remand this case for a new trial, we will not extend our discussion of this second issue. For the reasons stated by the dissenting judge in the Court of Appeals, however, the proceedings on remand must be free of a judicial statement to the jury resolving the central question of the defendant's obligation to pay the disputed tax.

For the reasons stated in part II of this opinion, we reverse the judgments of the Court of Appeals and the circuit court, and we remand this case to the circuit court for a new trial.  MCR 7.302(F)(1).

**WEAVER, C.J., and TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.**

**CAVANAGH and KELLY, JJ., concurred in the result only.**

People v Rodriguez


*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, and *K. Naomi Lim*, Assistant Attorney General [1200 Sixth Street, Suite 1500, Detroit, MI 48226] [(313) 256-2352], for the people.

*Hugh M. Davis, Jr.* [719 Griswold, Suite 1630, Detroit, MI 48226] [(313) 961-2255], for the defendant.