# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JIMMY EARL MCCASKILL,

      Defendant-Appellant.

UNPUBLISHED
November 18, 2014

No. 312409
Wayne Circuit Court
LC No. 11-008725-FC

ON REMAND

Before: METER, P.J., and JANSEN and WILDER, JJ.

PER CURIAM.

Defendant was convicted of armed robbery, MCL 750.529, possession of a firearm by a felon (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. These convictions arose from defendant's alleged participation in the July 13, 2011, robbery of a CVS Pharmacy located at Mack and Warren in the city of Detroit. This Court previously reversed defendant's convictions. See *People v McCaskill*, unpublished opinion per curiam of the Court of Appeals, issued April 1, 2014 (Docket No. 312409). We concluded that the trial court erred by permitting a police officer to testify that defendant was the person depicted in still photographs that CVS had created from a surveillance video, which was shown at trial, because the officer was in no better position to identify the person pictured than was the jury. We further concluded that this preserved error was not harmless beyond a reasonable doubt.

Our Supreme Court vacated this Court's opinion and remanded for reconsideration of whether any error in admitting the police officer's identification testimony was harmless, explaining that "[f]or nonconstitutional preserved error, a defendant has the burden of establishing a miscarriage of justice under a 'more probable than not' standard." *People v McCaskill*, 496 Mich 862 (2104), quoting *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999). We again conclude that the error was not harmless because it is more probable than not that the jury would have acquitted defendant without the challenged evidence.

In *People v Hawthorne*, 474 Mich 174, 181-182; 713 NW2d 724 (2006), our Court elaborated on the analysis required by *Lukity* and *People v Rodriguez*, 463 Mich 466, 474; 620 NW2d 13 (2000), as follows:

> Under *Lukity*, the defendant has the burden to demonstrate that a preserved, nonconstitutional error resulted in a miscarriage of justice. MCL 769.26 sets forth a presumption that such an error does not warrant reversal "unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." " 'An error is deemed to have been "outcome determinative" if it undermined the reliability of the verdict.' " [Citations omitted.]

In *Lukity*, 460 Mich at 495, our Supreme Court explained:

> The object of this inquiry is to determine if it affirmatively appears that the error asserted "undermines the reliability of the verdict." In other words, the effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error. [Citation omitted.]

Thus, a verdict is deemed reliable unless it is more probable than not that the outcome would have been different in the absence of the claimed error. " 'In making this determination, the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence.' " *Rodriguez*, 463 Mich at 474 (citation omitted).

Defendant was positively identified as one of the two perpetrators of the robbery by a CVS assistant manager, who also indicated that he picked defendant out of a photographic lineup and a live lineup. When he was shown a photograph at trial of a person in his store, apparently one of the still photographs created by CVS, the assistant manager said it was defendant. Another CVS employee did not remember if he had identified anyone when shown photographs by police officer Roland Brown, but he did not pick defendant or anyone else out of a photographic lineup. He did subsequently pick defendant out of a live lineup. An employee from another CVS Pharmacy, which was subsequently robbed by someone also suspected to be defendant, testified that she was not shown a photographic lineup but picked defendant out of a live lineup. Another employee at that store was unable to identify defendant in either a photographic or live lineup, and yet another employee was unable to identify defendant in a photographic lineup.

Officer Brown made three assertions that the still photographs depicted defendant. The first was an unqualified assertion that the pictures depicted defendant. The second was an assertion that they did so "as stated by the other witnesses;" this statement was ambiguous. The officer could have been merely reiterating the substance of the other witnesses' testimony. Alternatively, he could have been testifying that he had independently concluded that defendant was depicted in the photographs and that his conclusion in this regard was consistent with the other witnesses' testimony. The third statement was made on cross-examination, after Officer Brown acknowledged the poor resolution of the still photograph on the courtroom's screen, when he testified, "I've seen several photos and I am certain that is [defendant]."

The identifications of defendant by all the other witnesses were problematic. Employees from the second CVS initially gave statements with fairly consistent physical descriptions of the robber. They both described him as between 5' 6" and 5' 7" in height. One said he was 38 to 42 years old, about 200 pounds, and had a medium-to-light complexion. The other employee said the robber was 40 to 45 years old, 170 pounds, and had a medium complexion. The assistant manager at the first CVS, on the other hand, initially said that the individual was between 5' 9" and 5' 11" in height, 160 pounds, 49 to 52 years old, and had a dark complexion with a black mustache. The assistant manager indicated that the encounter lasted about 20 minutes, that he was with defendant (as opposed to defendant's accomplice) for about 10 minutes, and that he spoke with defendant during this encounter. The assistant manager stated that he was shoulder to shoulder with the man he identified as defendant, and not face to face. He initially said that the person he identified as defendant had teeth. Later, he said that he was not paying attention to whether the person had missing teeth. An employee from the second store testified that the person she identified as defendant was one foot away from her. She did not notice anything about his mouth.

Defendant presented the testimony of Vance Gerald, a program coordinator for a facility that housed people who had been released from prison, including defendant. Gerald testified, in essence, that defendant had been at the facility for at least four years, was a model resident, and was at the facility at the time of the robberies. Anthony Hightower, a staff member at the facility, testified that defendant was working with him on the dates of the robberies. Both testified that defendant had not had teeth for years.

We note that the jurors saw the surveillance video and at least one still photograph. The jurors were free to draw their own conclusions regarding whether the video and photograph depicted defendant. We further note that the absence of teeth is a defining characteristic that would typically grab one's attention and be included in an initial description given to police. In this case, the original descriptions were inconsistent with respect to the perpetrator's complexion and varied by as much as 11 years and 40 pounds. Defendant had an alibi, which was strongly supported by the testimony of seemingly reputable witnesses. These witnesses also provided valuable character testimony for defendant. Given all the witnesses' failures to note that the perpetrator had no teeth, the divergent descriptions of the perpetrator, the strong evidence that defendant was somewhere else at the time of the robbery, and all but one witness's inability to identify defendant in a photographic lineup, we conclude that the jurors would have entertained a reasonable doubt regarding the identity of the robber if they had not been presented with Officer Brown's unqualified assertions that the still photographs depicted defendant. We conclude that the erroneous admission of Officer Brown's assertions was not harmless because it is more probable than not that the jury would have acquitted without this evidence. We therefore again reverse and remand for a new trial.

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Patrick M. Meter
/s/ Kathleen Jansen
/s/ Kurtis T. Wilder