# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIAM LYLES, JR.,

        Defendant-Appellant.

UNPUBLISHED
December 22, 2015

No. 315323
Wayne Circuit Court
LC No. 12-008021-FC

ON REMAND

Before: BECKERING, P.J., and HOEKSTRA and GLEICHER, JJ.

PER CURIAM.

This case is before us on a remand from the Michigan Supreme Court. Specifically, following a jury trial, defendant appealed as of right his conviction for first-degree murder, MCL 750.316. In a previous opinion, based on the trial court's failure to give an instruction on the use of defendant's proffered character evidence, we determined that a miscarriage of justice had occurred and we reversed defendant's conviction and remanded for a new trial. *People v Lyles*, unpublished opinion of the Court of Appeals, issued July 22, 2014 (Docket No. 315323). The prosecutor then appealed to the Michigan Supreme Court. The Michigan Supreme Court vacated our previous decision and remanded to this Court with instructions that we consider whether the trial court's failure to give the requested instruction was harmless. *People v Lyles*, __ Mich __; __ NW2d __ (2015). That is, we have been directed on remand to consider whether it "'affirmatively appear[s]' that it is more probable than not that the error was outcome determinative." See *id.*, quoting *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999). Applying this standard, we conclude that the trial court's failure to give the requested character instruction was not harmless. Consequently, we again reverse defendant's conviction and remand for a new trial.

According to the evidence introduced at trial, the victim, Andrew Weathers, was stabbed to death in his bed in the early morning hours of December 28, 1983. At the time of his death, Weathers lived with his cousin Louise Kountz, her two daughters, Melissa Kountz and Kimberly Stokes, and Jimmy Godwin, a friend of the family. While the members of the household slept that evening, the perpetrator broke into the home through a basement window, turned off the electricity, placed the family's dog in the freezer, and then proceeded upstairs to stab Weathers, using a knife from the home's kitchen. A noise awakened the others in the home, at which time

-1-

Weathers was found murdered. Melissa Kountz and Kimberly Stokes went next door to call the police, and on their way out of the home they saw a shadowy figure, whom they believed to be defendant, based on the size and smell of the individual.

Both girls knew defendant because he had been involved in a romantic relationship with their mother, Louise Kountz, for several years leading up to Weathers's death, and at one time defendant also resided in the home. Defendant had moved out of the home in the summer of 1983, by which time his relationship with Louise Kountz had ended. According to the prosecution's evidence at trial, defendant's relationship with Louise Kountz had been violent and abusive, and this violence continued after the relationship concluded. For some unexplained reason, defendant purportedly blamed Weathers for the demise of the relationship, and he told Melissa Kountz during a telephone conversation that he was "going to get" Weathers. After the murder, one of Kountz's daughters testified to discovering a pair of defendant's shoes in the home with sponges taped to the soles of the shoes.

A warrant was issued for defendant's arrest in 1984, but defendant left the state of Michigan shortly after Weathers's death, and he was not apprehended until almost 30 years later, in July of 2012. At that time, defendant gave a statement to police in which he denied killing Weathers and denied breaking into Kountz's house in December of 1983. According to defendant, he and Kountz broke up because of "an age difference" and because defendant was unemployed. Defendant denied threatening Louise, and he in fact asserted that he was "scared of her family," which prompted him to leave town. At trial, defendant maintained that the evidence did not establish his guilt beyond a reasonable doubt and, to support his claim that he had not killed Weathers and to refute the evidence of violence submitted by the prosecution, defendant presented opinion and reputation evidence regarding his peaceful character. Ultimately, defendant was convicted of first-degree murder.

As noted, following his conviction, defendant appealed as of right to this Court. We reversed and remanded for a new trial based on the trial court's failure to give an instruction on the use of defendant's character evidence. In particular, in contrast to the violence described by several of the witnesses, defendant presented evidence of his peaceful character in the form of reputation and opinion testimony from a woman who had known defendant all her life and lived on defendant's street for many years. See generally MRE 404(a)(1); MRE 405. Despite this evidence, and despite defense counsel's request for an instruction on the use of this character evidence, the trial court failed to read M Crim JI 5.8a, which states:

> (1) You have heard evidence about the defendant's character for [peacefulness/honesty/good sexual morals/being law-abiding/(*describe other trait*)]. You may consider this evidence, together with all the other evidence in the case, in deciding whether the defendant committed the crime with which (he/she) is charged. Evidence of good character alone may sometimes create a reasonable doubt in your minds and lead you to find the defendant not guilty.

In particular, as it relates to this case, the trial court failed to instruct the jury that it could use evidence of defendant's character for peacefulness when deciding whether defendant committed the crimes, and that evidence of "good character alone may sometimes create a reasonable doubt in your minds and lead you to find the defendant not guilty." Given defendant's request for this

instruction and the evidence supporting the giving of this instruction, we determined previously that, on the facts of this case, the trial court's failure to instruct the jury on the use of defendant's character evidence constituted a miscarriage of justice requiring reversal of defendant's conviction and remand for a new trial. *Lyles*, unpub op at 5.

The Supreme Court vacated our prior decision and remanded to this Court. In doing so, the Supreme Court did not suggest that we were mistaken in our conclusions that an instruction on character evidence was warranted given the evidence presented by defendant at trial and that the trial court erred by failing to properly give such an instruction. Instead, the Supreme Court specifically directed that we consider whether the trial court's failure in this regard was harmless under the standard set forth in *Lukity*, 460 Mich at 496.

In this respect, judicial review of a preserved, nonconstitutional error, including a trial court's failure to give a requested jury instruction, is amenable to harmless error review under MCL 769.26. See *Lukity*, 460 Mich at 495; *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003). This provision states:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice. [MCL 769.26.]

MCL 769.26 "presumes that a preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative. *Lukity*, 460 Mich at 495-496 (quotation marks omitted). Consequently, the burden is on defendant to "demonstrate that after an examination of the entire cause, it shall affirmatively appear that the error asserted has resulted in a miscarriage of justice." *Id.* at 495 (quotation omitted). "In making this determination, the reviewing court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *People v Rodriguez*, 463 Mich 466, 474; 620 NW2d 13 (2000), quoting *People v Elston*, 462 Mich 751, 766; 614 NW2d 595 (2000). See also *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013). "The object of this inquiry is to determine if it affirmatively appears that the error asserted undermines the reliability of the verdict." *Lukity*, 460 Mich at 495 (quotation marks and citations omitted). "In other words, the effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *Id.*

In this case, with respect to the nature of the error, as discussed, the trial court failed to properly instruct the jury on the use of defendant's proffered character evidence relating to his peaceful nature, and in particular failed to instruct the jury that evidence of good character alone could provide grounds for reasonable doubt. In effect, this error by the trial court eviscerated the significance of defendant's character evidence, which was crucial to his defense, and wholly undermined his effort to establish that he was a peaceful person who could not have committed such a vicious murder. As is evident from the evidence he introduced at trial, defendant's

proposed defense was to deny responsibility for the murder and to support that denial with evidence of his peaceful character. In his statement to police, defendant denied any involvement with the killing, he denied breaking into the home, he denied threatening Kountz, and he in fact claimed that he fled the state in fear of Kountz's family. At trial, his attorney then argued that there was no evidence tying defendant to the murder, and counsel attempted to bolster the credibility of defendant's denials, and to refute the prosecution's evidence of defendant's past violence, by introducing evidence that defendant was a peaceful individual. Yet, despite this evidence, which was at the very heart of defendant's defense, the trial court failed to instruct the jury that evidence of good character alone could create a reasonable doubt. By failing to give the key part of the instruction requested by defendant, the trial court prevented the jury from having the opportunity to properly weigh defendant's character evidence.[1] Cf. *People v Silver*, 466 Mich 386, 393; 646 NW2d 150 (2002) ("Not to give them an instruction that allowed them to agree with defendant's view of the events in this case undermines the reliability of the verdict."); *Rodriguez*, 463 Mich at 474 (finding outcome determinative error where the jury received no instruction on an issue that was "crucial to the defendant's defense and was clearly supported by the evidence").

Further, considering the nature of this error in the context of the evidence presented by the prosecution, we are persuaded that defendant has met his burden of demonstrating that it is more probable than not that a different outcome would have resulted without the error. *Lukity*, 460 Mich at 495-496. The evidence of defendant's guilt was far from overwhelming. The murder at issue occurred approximately 30 years ago and, at the time of trial, most of the evidence relating to the crime had been lost or destroyed. The building where the records for the case were stored was damaged by flooding and break-ins, such that nothing remained of the original case file. Consequently, there were no crime scene photographs, no murder weapon, and no original witness statements to police. There were no fingerprints or DNA evidence linking defendant to the crime, and the shoes purportedly recovered in the home are gone. At trial, the prosecution did not introduce police records or hospital records pertaining to the abuse defendant purportedly inflicted on Louise Kountz or others in the household. Some of the police officers involved with the original murder investigation died before trial. Likewise, Louise Kountz died before trial and was thus unable to testify about the nature of her relationship with defendant, Weathers's interference, if any, in that relationship, or the events surrounding Weathers's murder.

---

[1] The prosecution suggested in its submissions to the Michigan Supreme Court that defendant cannot show it is more probable than not that the error was outcome determinative because defense counsel did not focus on defendant's character evidence during closing arguments. We find this argument unpersuasive. Whether or not defense counsel referenced defendant's character evidence during closing, the fact remains that character evidence was introduced at trial and counsel specifically requested that the trial court instruct the jury on the use of this evidence. Regardless of whether counsel emphasized this evidence during closing, a properly instructed jury should have been told that the character evidence could, on its own, create a reasonable doubt.

Moreover, of the witnesses who did testify at trial, most could say nothing that could place defendant in the home on the night of the murder. The evidence placing defendant at the scene of the crime came from Kountz's daughters. Both of these women, who were teenagers when the murder occurred, testified that defendant was in the house that night. However, notably, neither actually claimed to see defendant. Instead, they both saw "a shadow" of defendant's general size and shape, and they smelled "stale cigarettes," an odor they associated with defendant.[2] In other words, the prosecution's attempt to establish that defendant was in the home that night rested largely on eyewitness identification of a shadow, at night, in a house with no electricity.

Aside from this minimal identification evidence linking defendant to the crime scene, the prosecution presented evidence of defendant's flight from Michigan after Weathers's death, which, though relevant, is insufficient, without more, to sustain a conviction. See *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). In addition to the evidence of defendant's flight, much of the prosecution's case rested on establishing that defendant had a motive for the crime insofar as defendant purportedly blamed Weathers for interfering with defendant's relationship with Kountz. The evidence of motive was hardly compelling given that it was unclear from the evidence presented at trial why defendant would have blamed Weathers of all people for the demise of his relationship.[3] And, in any event, although certainly relevant in a homicide prosecution, motive is not an element of the crime and, on its own, motive is not sufficient to establish a first-degree murder conviction. See *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008); *People v Sowders*, 164 Mich App 36, 42; 417 NW2d 78 (1987). Fairly considered, the majority of the prosecution's case was devoted to establishing that defendant had a violent history and a tumultuous relationship with Kountz in particular. But, this purportedly violent past does not place defendant in the home on the night of the murder and it does not, on its own, establish that defendant killed Weathers. Moreover, in our view, the fact that defendant's allegedly violent past was so important to the prosecution's case only compounded the trial court's error in denying defendant an instruction on the potential effect of his character evidence. Defendant's best defense to this evidence of his past violence was his evidence regarding his peaceful character, which was rendered largely ineffective by the trial court's failure to properly instruct the jury on its use.

---

[2] We note also that the prosecutor presented evidence that, after the murder, one of Kountz's daughters saw a pair of defendant's shoes in the kitchen, with sponges on the bottom of the shoes. The shoes were unavailable at trial, and, though the prosecutor argued that defendant wore the shoes that night to quiet his movements in the house, no explanation was provided for why, if that were the case, the shoes were left behind in the kitchen. In other words, the nexus between these shoes and the homicide is tenuous at best.

[3] No one at trial gave any explanation as to why defendant would have targeted Weathers as the cause for the breakdown in his relationship with Louise. For example, there was evidence that one of Kountz's daughters struck defendant with a poker, that Godwin physically fought defendant, and that another man who lived in the home at one point picked up a cast iron skillet to strike defendant. In contrast, there was no such evidence of Weathers fighting with defendant or intervening on Louise's behalf.

Ultimately, considering the entire cause, we are persuaded that the trial court's failure to give the requested character evidence instruction eviscerated the effect of defendant's proffered character evidence and that such an error cannot be considered harmless in light of the evidence relied upon by the prosecution. Consequently, we conclude that defendant has met his burden of establishing that it is more probable than not that the error was outcome determinative. See *Lukity*, 460 Mich at 496. We therefore reverse defendant's conviction and remand for a new trial.

Reversed and remanded. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Joel P. Hoekstra
/s/ Elizabeth L. Gleicher

-6-