*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RHIANNA NICHOLE BRYANT,

        Defendant-Appellant.

FOR PUBLICATION
June 16, 2022
9:05 a.m.

No. 356125
Washtenaw Circuit Court
LC No. 20-000140-FC

Before: GLEICHER, C.J., and SAWYER and GARRETT, JJ.

GLEICHER, C.J.

The circuit court convicted Rhianna Nichole Bryant of two counts of second-degree child abuse, MCL 750.136b(3)(a), after a bench trial. One count hinged on Bryant's failure to seek emergent medical care for a head injury suffered by her son, CB.

MCL 750.136b(3)(a) contemplates that a person is guilty of second-degree child abuse if the person's "reckless act" or "omission" causes serious physical harm to a child. The definition of the term "omission" is limited to willful failures to provide a child with food, clothing, or shelter, or willful abandonment. As the prosecution admits, the evidence established none of these alternatives. We reverse Bryant's conviction under this count and remand for consideration of resentencing.

## I. BACKGROUND FACTS AND PROCEEDINGS

Three-year-old CB sustained a severe head injury while in Bryant's care, and the prosecution charged Bryant with first and second-degree child abuse. In support of the first-degree child abuse charge, the prosecution asserted that Bryant intentionally threw CB over a baby gate causing him to strike his head against a wall, and that she knowingly neglected to seek medical care for his injury. The second-degree child abuse allegations were added during the prosecutor's closing argument as alternative charges supporting conviction. The prosecutor argued that Bryant's reckless act caused CB's injuries and that she had "willfully abandoned" him by failing to obtain timely medical care.

The circumstances of CB's fall were contested at the trial. Bryant testified that she had "leverage[d]" CB over the baby gate and denied that he had struck his head when he landed on the other side. Other evidence sharply contradicted this version of the events. The trial court credited the evidence supporting that Bryant had acted recklessly.

The witnesses agreed that after the baby-gate incident, CB cried for a long time but did not appear to have sustained a serious injury. He napped throughout the afternoon and did not awaken for dinner. Bryant opted to let him sleep. When she checked on him the next morning, she found him unresponsive and cold. At the hospital, the doctors discovered that CB had sustained an epidural hemorrhage caused by an impact to the head. One of CB's physicians testified that had the child been brought to the hospital 90 minutes to two hours earlier, it would have "changed his prognosis dramatically." CB now has profound brain damage.

The trial court acquitted Bryant of both counts of first-degree child abuse but convicted her of two counts of second-degree child abuse. As to the first count, the court determined that Bryant acted recklessly by tossing or throwing CB over the baby gate, causing the head injury. As to the second count, the court found that Bryant

> saw [CB hit his head], she heard it, she would have heard it, she would have seen it, and that [sic] a reasonable person in that situation would have then gone in to make sure that he was okay. If that had happened, seeing that he was sleeping and sleeping and not wanting to eat; and then not doing anything, not waking him up, not calling a doctor, not taking him to the hospital, not following up on it, that would be behavior which is just, essentially, an omission that caused this serious physical harm.

Addressing the alternative legal theory underlying second-degree child abuse the court ruled that Bryant's

> omission, i.e. failure to follow up and check and make sure that [CB] was okay, given what should have been obvious to her that he needed to be checked up on, that she likely hurt him, and that was an omission which caused the obvious serious physical harm which resulted in him essentially being virtually brain dead.

Bryant claimed this appeal, contending that insufficient evidence supported her conviction on the second count because failing to seek medical care is not punishable as second-degree child abuse. The prosecution filed a confession of error under MCR 7.211(C)(7), agreeing that failure to seek medical care cannot undergird a conviction under MCL 750.136b(3)(a). A motion panel of this Court rejected the prosecution's confession of error, deeming the issue presented worthy of plenary review. *People v Bryant*, unpublished order of the Court of Appeals, entered September 14, 2021 (Docket No. 356125). We now accept the confession of error and explain why.

## II. ANALYSIS

We review de novo whether sufficient evidence supports a conviction, viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find the crime's elements proven beyond a reasonable doubt. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). We also independently review questions of statutory

-2-

interpretation, including the meaning of statutory terms. *People v Rodriguez*, 463 Mich 466, 471; 620 NW2d 13 (2000).

## A. THE OMISSION THEORY

The second-degree child abuse statute incorporates three alternative theories for conviction—two based on an accused's acts, and one arising from an omission. The provisions relevant to this appeal state:

> (a) The person's *omission* causes serious physical harm or serious mental harm to a child or if the person's *reckless act* causes serious physical harm or serious mental harm to a child.
>
> (b) The person knowingly or intentionally *commits an act* likely to cause serious physical or mental harm to a child regardless of whether harm results. [MCL 750.136b(3) (emphases added).]

The trial court's guilty verdict on the second count centered on the "omission" theory: that Bryant failed to check on CB during the night or to seek medical attention for him when he failed to awaken from sleep. But the child abuse statute incorporates a limited definition of the term "omission," that does not include the failure to obtain medical care: " 'Omission' means a willful failure to provide food, clothing, or shelter necessary for a child's welfare or willful abandonment of a child." MCL 750.136b(1)(c).

We must assume that the Legislature acted purposefully by excluding medical care as an omission punishable as second-degree child abuse. The *expressio unius est exclusio alterius* doctrine, postulating that " 'the expression of one thing suggests the exclusion of all others,' " aids our interpretation. The presence of specific omissions in the statutory list strongly weighs against the addition of an unmentioned omission. See *People v Wilson*, 500 Mich 521, 526; 902 NW2d 378 (2017) ("The presence of one limitation on the kinds of convictions that are to be counted strongly suggests the absence of others unstated.). Our conclusion is reinforced by the language of MCL 722.622(k)(*i*) which defines "child neglect" as "[n]egligent treatment, *including* the failure to provide adequate food, clothing, shelter, *or medical care* . . . ." (Emphasis added.) See *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011) ("[C]ourts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute . . . .") (quotation marks and citation omitted). Thus, Bryant's failure to more expeditiously obtain medical care for her son does not constitute second-degree child abuse under an "omission" theory.

## B. ABANDONMENT THEORY

Because the prosecutor also raised an argument under the "abandonment" component of the definition of "omission," we address whether Bryant could have been convicted on this ground. As a reminder, an "omission" for purposes of the second-degree child abuse statute includes "willful abandonment of a child."

The word "abandonment" is not defined in the statute. Its ordinary meaning is not hard to parse, however. "Abandonment" implies an intended desertion or a deliberate severing of a

relationship. In different but somewhat related contexts, courts have similarly defined it as "such conscious disregard and indifference [by a parent] to his parental obligations as to evince a settled purpose to forego his obligation and duties to his child," *In re Juvenile Appeal*, 187 Conn 431, 441; 446 A2d 808 (1982) (quotation marks and citation omitted), and "conduct which manifests a settled purpose to permanently forego all parental rights and the shirking of the responsibilities cast by the law of nature so as to relinquish all parental claims to the child," *In Interest of DAH*, 390 So 2d 379, 381 (Fla Dist Ct App, 1980).

In an unpublished decision construing Michigan's second-degree child abuse statute, this Court adopted a dictionary definition of "abandonment": "*Merriam-Webster's Collegiate Dictionary* (11th ed) defines 'abandon,' in part, as 'to give up with the intent of never again claiming a right or interest in; to withdraw protection, support, or help from.' " *People v Krukowski*, unpublished per curiam opinion of the Court of Appeals, issued August 1, 2019 (Docket No. 334320), p 7. The Court continued: "The failure to seek a certain type of medical care is not equivalent to withdrawing protection, help, or support from a child, or giving a child up with the intent never to claim an interest in the child." *Id*.[1] We adopt this definition. Applying it here, Bryant's delay in seeking medical attention for CB did not constitute abandonment under MCL 750.136b(1)(c).

And even if we had selected a more expansive definition of "abandonment," no evidence supports that Bryant "willfully" abandoned her child. In *People v Hegedus*, 432 Mich 598, 605 n 7; 443 NW2d 127 (1989) our Supreme Court favorably recognized several definitions of "wilful" including:

> "[W]illful" means action taken knowledgeably by one subject to the statutory provisions in disregard of the action's legality. No showing of malicious intent is necessary. A conscious, intentional, deliberate, voluntary decision properly is described as willful, 'regardless of venial motive.
>
> * * *
>
> An omission or failure to act is wilful if it is done knowingly and purposely. Wilful does not require a showing of moral turpitude, evil purpose, or criminal intent provided the individual is shown to have acted or to have failed to act knowingly and purposely. [Cleaned up.]

Citing *Hegedus*, the Supreme Court reiterated in *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008), that "[a] conscious, intentional, deliberate, voluntary decision properly is described as willful, regardless of venial motive." (Quotation marks omitted.)

---

[1] The Michigan Supreme Court heard oral argument to determine whether to grant leave to appeal to consider, in part, "whether the phrase 'willful abandonment' in MCL 750.136b(1)(c) encompasses a parent's failure to timely seek professional medical care for his or her child." *People v Krukowski*, 505 Mich 998 (2020). After arguments, the Court denied the application for leave to appeal. *People v Krukowski*, 506 Mich 960 (2020).

No evidence supported that Bryant was "wilfully" indifferent to her son's medical needs. CB had no obvious injuries and although he cried after striking his head, the evidence failed to substantiate that Bryant consciously, deliberately, or intentionally withdrew "protection, help or support" from her son. Wilfull misconduct and negligence are distinct legal concepts. The trial court's determination that Bryant should have checked on her son more aggressively dovetails with a finding that she should have been more attentive. But the trial court did not find, nor could it have done so on this record, that Bryant deliberately or intentionally decided against taking her son to a hospital before she did so.

We reverse Bryant's conviction on the second count of second-degree child abuse. Absent this conviction, the applicable guidelines range may be lower than the one within which Bryant was originally sentenced. Accordingly, we remand for entry of a judgment of acquittal as to the second count of second-degree child abuse and to determine if resentencing is required. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Kristina Robinson Garrett