*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

DEQUARIES DEVONTE JACKSON,

    Defendant-Appellant.

UNPUBLISHED
June 6, 2019

No. 343198
Ingham Circuit Court
LC No. 17-000395-FC

Before: SWARTZLE, P.J., and M. J. KELLY and TUKEL, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of second-degree murder, MCL 750.317, felon in possession of a firearm, MCL 750.224, and possession of a firearm during the commission of a felony, MCL 750.227b (felony-firearm). The trial court sentenced defendant to concurrent prison terms of 300 to 600 months for the second-degree murder conviction and 30 to 60 months for the felon-in-possession conviction, and to serve a consecutive two-year term for the felony-firearm conviction. Defendant appeals as of right, and we affirm.

On April 1, 2017, defendant fatally shot Westly Cheeks in the face at close range. Cheeks was visiting his girlfriend, Allison Browne, at the home of Jacqueline Boose, which was in Lansing. Defendant arrived, and defendant and Cheeks, who were apparently members of the same gang, then argued in the kitchen for an extended period of time, apparently about a debt of $50, a sale of drugs, or a combination of the two. Browne and Boose then heard a gunshot. Defendant fled and was picked up by his girlfriend, Angel Jackson. Defendant and Jackson were found and arrested in a home in the downriver section of metro Detroit on April 4.

## I. GANG INVOLVEMENT

Defendant first argues that the trial court erred in admitting evidence that defendant was in a gang. We disagree. Whether other-acts evidence was properly admitted is reviewed for an abuse of discretion. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595(2005). The trial court does not abuse its discretion when it chooses an outcome that falls within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Moreover, an evidentiary error does not merit reversal in a criminal case unless, after

review of the entire cause, it appears that it is "more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

The trial court granted the prosecutor's motion to admit evidence that defendant and Cheeks were in the same gang. At a pretrial hearing, the prosecutor argued that defendant's confrontation with Cheeks was motivated by a dispute that arose because Cheeks wanted to leave the gang. The trial court agreed that the dispute was evidence of defendant's motive but excluded evidence of any other gang-related activity, including violence. At trial, the prosecutor asserted in the opening statement that defendant and Cheeks were quarrelling because Cheeks owed defendant money and because Cheeks wished to leave their gang. Browne testified that Cheeks and defendant were members of the same gang and claimed that defendant had threatened Cheeks in social media messages in the month before Cheeks was killed; the messages reinforced to Cheeks that defendant was the leader of their gang. Detective Andrew Hogan testified that defendant and Cheeks were in a gang called the Four Corner Hustlers, which was associated with the Vice Lords from Chicago. The prosecutor argued in closing argument that defendant killed Cheeks because he wanted to leave the gang and because he owed defendant money. The only testimony admitted that defendant was in a gang were the statements of Browne and Hogan.

Evidence of prior acts or crimes by a defendant must be excluded, except as allowed by MRE 404(b), to avoid the danger of a conviction based on a defendant's history of misconduct rather than upon the evidence of his conduct in the case in issue. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998). MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Generally, to be admissible under MRE 404(b), other-acts evidence (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not have a probative value substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004), citing *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993). A purpose is proper where evidence is offered to prove a fact other than a defendant's character and his propensity to commit crimes. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 725 (2005).

Here, regarding the first requirement, defendant argues that the evidence was admitted to demonstrate that he was associated with violence, an inference that the jury would draw from gang membership. However, that was not the purpose for the admission of the evidence. Instead, the evidence of defendant's gang affiliation was admitted to show his motive and was not used to show his propensity to act as a gang member. Therefore, the evidence was admitted for a proper purpose.

In order to be admissible under MRE 404(b), the evidence also must be relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *People v Sabin (After Remand)*, 463 Mich 43, 56-57; 614 NW2d 888 (2000). "Under this broad definition," evidence that is useful in shedding light on any material point is admissible. *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). Here, the evidence was relevant to demonstrate the context of defendant's confrontation with Cheeks—that they were experiencing a conflict related to their common gang membership. Thus, the evidence was relevant.

Regarding the third requirement, defendant contends that the evidence should have been excluded because its minimal probative value was substantially outweighed by its prejudice. Relevant evidence may be excluded under MRE 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *People v Watkins*, 491 Mich 450, 477, 481; 818 NW2d 296 (2012). Unfair prejudice occurs when there is a tendency for the evidence "to be given undue or preemptive weight" by the jury, or when it "would be inequitable to allow use" of the evidence. *People v Wilson*, 252 Mich App 390, 398; 652 NW2d 488 (2002), citing *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995). " 'Unfair prejudice' does not mean 'damaging.' " *Lewis v Legrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003). To constitute "unfair prejudice," evidence must go beyond the merits of the case to inject issues broader than the defendant's guilt or innocence, such as "bias, sympathy, anger, or shock." *McGhee*, 268 Mich App at 614.

Defendant argues that the evidence was unfairly prejudicial because gang affiliation is associated with a propensity for violence, and the jury could have been so influenced. However, defendant had threatened Cheeks in a message which also discussed gang hierarchy. Thus, Browne's testimony that defendant and Cheeks were in the same gang in which animosity existed was substantive evidence of defendant's motive to confront Cheeks. Moreover, because the evidence of gang affiliation was intertwined, through the text message, with threats, it was not introduced solely to show criminal disposition. See *United States v Morgan*, 117 F3d 849, 861 (CA 5, 1997) ("Evidence of criminal activity other than the charged offense is not considered extrinsic within the proscription of Rule 404(b) of the Federal Rules of Evidence if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense."); *United States v Reynolds*, 762 F2d 489, 494 (CA 6, 1985) ("The references to possible future criminal activity were intertwined with and part of the evidence of motive, scheme, and intent. This evidence was not introduced solely to show criminal disposition.").[1]

---

[1] The opinions of lower federal courts are not binding on this Court, but such opinions may be considered for their persuasive value. See *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004). Reliance on federal authority is particularly appropriate here, as the text of FRE 403 and MRE 403 are identical.

Though the evidence may have been somewhat prejudicial to defendant because it revealed conflict between Cheeks and defendant in their gang environment, we cannot say that it was unfairly prejudicial. Only two witnesses testified that defendant was in a gang, and the trial court barred any evidence of violence or drug dealing regarding the gang. The prosecutor did not argue that defendant had a propensity for violence or that gang affiliation was anything more than a source of defendant's conflict with Cheeks. Thus, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice because the jury was not likely to give the statement that defendant was in a gang with Cheeks undue weight.

Defendant suggests that the performance of his trial attorney was deficient in failing to object to evidence that defendant was in a gang. However, this claim has no merit, as defendant's trial attorney opposed the admission of the evidence in a pretrial motion. Moreover, because the admission of the evidence was proper, any further objection would have been futile, and counsel does not render ineffective assistance by failing to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## II. PROSECUTORIAL ERROR

Defendant next argues that he was denied a fair trial by the conduct of the prosecutor. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Norfleet*, 317 Mich App 649, 660 n 5; 897 NW2d 195 (2016). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent person, or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Unger*, 278 Mich App at 235.

The prosecutor has a duty to ensure that the defendant receives a fair trial. *People v Farrar*, 36 Mich App 294, 299; 193 NW2d 363 (1971). The responsibility of a prosecutor is "to seek justice and not merely convict." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "[T]he test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Id.*[2] A fair trial for a defendant "can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id.* at 63-64.

### A. ASKING LEADING QUESTIONS

Defendant argues that the prosecutor consistently asked leading questions. "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." MRE 611(d)(1). A leading question is a question that "contain[s] its own presumptive answer." *People v Snyder*, 462 Mich 38, 43; 609 NW2d 831 (2000). Leading questions can be problematic "because they are considered confusing and

---

[2] The phrase "prosecutorial misconduct" is a term of art "used to describe any error committed by the prosecution, even though claims of inadvertent error by the prosecution are 'better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases constituting 'prosecutorial misconduct.' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

suggestive." *People v Adkins*, 452 Mich 702, 731; 551 NW2d 108 (1996). However, defendant cites no authority to support the proposition that the mere use of leading questions by a prosecutor constitutes conduct that requires reversal.

Defendant claims that there were several instances in which the prosecutor asked leading questions to witnesses Browne, Marquis Hightower, and Officer Westly Vaughn. However, we note that while defendant in his brief on appeal has provided citations to the pages in which the offending questions can ostensibly be found, defendant has failed to quote or otherwise provide the actual questions. In some instances, it is difficult to ascertain, after reviewing the cited page, which question defendant is challenging. A party may not leave it to this Court to search for the factual basis in support of his argument, and any such argument is deemed abandoned. *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001).

Defendant first claims that the prosecutor suggested in a question to Browne that she returned to Boose's home after midnight. However, this claim is without merit, as Browne *previously* testified that she returned "after midnight or around midnight. I think it may have been even a little after that." Defendant next asserts that the prosecutor suggested that defendant was wearing a hoodie. The question was, "Do you remember if it was a hoodie or not a hoodie?" This question is not a leading question; there were only two possible answers, yes or no, and the question presented only equanimity between the two, not suggesting that either answer was the correct one. Next, defendant asserts that the prosecutor suggested to Browne that defendant "did not leave after the argument right away." Defendant does not quote the question he takes issue with, and we do not see any question that directly relates to this. The closest we found was when the prosecutor asked Brown whether it was "[f]air to say that [defendant] could have left if he wanted to," "but he did not do that, did he?" Arguably, this was leading because the question suggested that defendant did not leave the home during his argument with Cheeks. However, this testimony was of no significance, as there was no evidence or suggestion that defendant was ever not free to leave or that his freedom was somehow constrained. Thus, the answer to the question could not have been prejudicial to defendant, as it added nothing material. Finally, the prosecutor asked Browne, "One of the first things you said to the detective or to law enforcement is that they'll kill you and Jacki. What things have you done recently to protect yourself?" She responded that she had bought a new house and moved. This question did not suggest an answer and was in reference to why she did not want the officer to record her first statement.

Defendant also takes issue with how the prosecutor conducted his examination of Hightower. The prosecutor asked Hightower, who gave defendant and his girlfriend a ride to his apartment following the murder, "[D]id you go pick [defendant] up that Saturday morning around 11:00 a.m.?" The question may technically suggest an answer, and up to this point, there had been no evidence establishing the timeline. But the time Hightower picked up defendant was not that important because Hightower went on to testify about how he transported defendant to a parking lot where defendant was picked up by another person. The prosecutor also asked Hightower, "Did [defendant] tell you that he needed to get out of town?" This type of question, however, does not suggest the answer. Defendant also claims that the prosecutor told the witness

there was no question about the witness's knowledge. Presumably,[3] defendant is referring to the prosecutor asking, "[B]ut [there is] no question that you knew that there was a disagreement between the two of them [defendant and Cheeks]?" But looking at the questioning preceding this particular question shows that Hightower had already discussed that he was fully aware that defendant and Cheeks had been quarreling because defendant admitted to the witness that he had been arguing with Cheeks. Further, Hightower had testified just before that he "knew they [defendant and Cheeks] had problems" leading up to the argument on April 1. Defendant also asserts that the prosecutor was leading Hightower to state that he had been "torn between two stories." The prosecutor did ask Hightower whether he was "torn between losing a friend and testifying against a friend." Arguably, this is leading the witness, but it served to show the witness's possible bias. Exploring such bias is an example of "develop[ing] the witness' testimony," MRE 611(d)(1), and thus is not improper.

Defendant also cursorily argues, "A hearsay objection gets sustained? No problem because [the prosecutor] then led Officer Vaughn to get the answer he wanted." But the only hearsay objection leading up to the transcript page cited by defendant related to how other officers had explained to Officer Vaughn that the area where defendant was found and arrested was "a very high crime area." The questions on the page defendant cites do not relate to the crime rate of the area. Instead, the questions pertain to the events that happened inside the house at the time defendant was arrested. Moreover, assuming there were leading questions regarding the high crime rate of the area, to which defendant had fled, defendant fails to explain how this inconsequential fact prejudiced him in any manner.

Thus, the prosecutor arguably did ask some leading questions. Others that may have appeared leading, however, were instances where the prosecutor merely was developing prior testimony and asking a question about it. Leading questions during a trial do not constitute error requiring reversal unless prejudice or a " 'pattern[] of eliciting inadmissible testimony' " has been demonstrated. *People v Johnson*, 315 Mich App 163, 199; 889 NW2d 513 (2016), quoting *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411(2001). Here, defendant has failed to establish that the questioning prejudiced him or that the questioning created a pattern of eliciting inadmissible testimony. As such, defendant has not shown that he was denied a fair trial by the prosecutor's questioning.

## B. VOUCHING FOR WITNESSES

Defendant also argues that many of the prosecutor's questions implied a personal knowledge regarding the truthfulness of a witness's testimony. Questions that ask a witness to comment or provide an opinion on the credibility of a witness are improper because "matters of credibility are to be determined by the trier of fact." *People v Buckey*, 424 Mich 1, 16-17; 378 NW2d 432 (1985) (quotation marks and citations omitted); see also *People v Malone*, 180 Mich App 347, 361; 447 NW2d 157 (1989) ("The prosecutor's question was inappropriate because it

---

[3] Again, as with nearly all of his leading-question challenges, defendant fails to quote the actual question with which he takes issue.

improperly bolstered the credibility of a prosecution witness."). Because credibility matters are to be determined by the jury, it is generally improper for a witness to provide an opinion on the credibility of another witness. *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014); *Dobek*, 274 Mich App at 71.

The prosecutor asked Browne, "If Jacki Boose takes the stand tomorrow and testifies . . . she didn't know the defendant was in her home that night, is she going to be lying?" Browne responded affirmatively. This question arguably did ask for Browne's opinion of Boose's future testimony. However, the question was limited to one statement, rather than Boose's general credibility. Moreover, that Browne thought Boose would be lying was an obvious inference from Browne's testimony that Boose was there when defendant entered the home and that Boose knew defendant. Ultimately, the jury had to decide whether Browne or Boose was telling the truth in this regard, and Browne's assertion that she was being truthful and that Boose was not would not have lent much to the determination. Additionally, the jury could have convicted defendant based on Hightower's retelling of defendant's admission that he shot Cheeks in the face, regardless of Browne's testimony.

Defendant argues similarly that the prosecutor vouched for Hightower when he asked and Hightower affirmed that "[i]n exchange for [the benefits of the plea agreement], you [agreed that you] would testify truthfully at his preliminary examination, which you did on May 11." To begin with, the question is ambiguous. It appears that the question asks whether Hightower testified on May 11, not whether his testimony was truthful. But even if the question asked about truthfulness, the plea agreement did call for truthful testimony, so this was an accurate recap of the agreement.

Defendant also argues that the prosecutor should not have stated that a witness previously had invoked her privilege against self-incrimination. However, the question was made in the course of disclosing an agreement that might be viewed as affecting her credibility. If anything, the fact that Boose had been granted immunity would inure to the benefit of defendant because it could create a motive for Boose to testify against defendant, and thus provided ready grist for the cross-examination of her.

Defendant argues that the prosecutor also impermissibly suggested during closing argument that he had personal knowledge of the subject matter of witnesses' testimony. A prosecutor may not "vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). Such commentary could influence the jury to decide the case based on the prosecutor's special knowledge and not on the evidence presented. *People v Bennett*, 290 Mich App 465, 476-477; 802 NW2d 627 (2010), citing *Bahoda*, 448 Mich at 276. Further, the prosecutor may not vouch for a witness's credibility based on an assertion of the prosecutor's integrity or the prestige of the position. *McGhee*, 268 Mich App at 633. A prosecutor's statement about the credibility of a witness may infringe on the "exclusive province of the jury" to determine credibility, particularly given the importance of the prosecutor's position. *People v Erb*, 48 Mich App 622, 631-632; 211 NW2d 51 (1973).

The prosecutor, in closing, stated:

> I am pretty confident [Boose] knows [that Wilbert] Edmond[4] saw the murder as
> well, and she knows Wilbert Edmond fled the home with [defendant], too. And
> we know Edmond was there. And how do we know that? Well, Allison Browne
> told us he was there. She has no reason to lie about Wilbert Edmond being there.

Defendant states that "we" refers to the prosecutor having personal knowledge that Edmond was at the scene of the crime. However, in this context the prosecutor simply appeared to be summarizing the prosecution's view of the evidence and referring to "we" as all of the trial participants who had heard the evidence together during the trial. Prosecutorial comments must be read as a whole and evaluated in context, including the arguments of the defense and the relationship they bear to the evidence. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). Prosecutors have "great latitude regarding their arguments" in closing, and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236, citing *Bahoda*, 448 Mich at 282. Here, the prosecutor directly attributed the knowledge of "we" regarding Edmond to Browne's testimony. "[A] prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Thomas*, 260 Mich App at 455. The prosecutor may argue from the facts that a witness should be believed. *Id*. There thus was no error in the prosecutor's reference in this context to something "we know."

Defendant argues similarly that the prosecutor engaged in improper vouching when stating:

> [Defendant] holes up in a townhouse in south Detroit. Okay. Why? Because he
> knew Allison Browne could identify him. I am pretty confident he knew [Boose]
> wasn't going to rat him out, but he knew that white bitch. She would.

Defendant takes issue with the word "confident." However, the prosecutor did not identify any particular testimony that he personally knew should be believed; instead, he argued based on the evidence. The prosecutor was making the reasonable inference that defendant had fled to another city because he thought that Browne would identify him to the police. The evidence at trial was that defendant left town, Browne identified defendant at the scene of the crime, and defendant referred to Browne as the "white bitch."

Therefore, we hold that none of the purported instances of "vouching" acted to deny defendant a fair trial.[5]

---

[4] There was evidence that Edmond also was in the home and that he and Boose had a relationship. Boose denied he was there.

[5] Although we find that the prosecutor's argument did not imply personal knowledge of disputed facts, the trial prosecutor nevertheless would be well-advised to cease using in arguments to the

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant suggests that his trial counsel was ineffective for failing to object to the instances of purported prosecutorial error.   A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions.  US Const, Am VI; Const 1963 art 1, § 20.  This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).  In order to demonstrate an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007).  A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).  The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id.*  The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

As noted, the only objections that arguably would have had any merit would have been objections to a few leading questions,[6] but as already discussed, the questioning did not create any prejudice.  In other words, assuming this failure to object did fall below an objective level of reasonableness, the record does not show how there was a reasonable probability that the leading questions were outcome determinative.   Accordingly, defendant's claims of ineffective assistance fail.

## III.  JUDICIAL BIAS

Defendant argues that the trial judge exhibited judicial bias.  Defendant raised this issue in a motion for mistrial.  We review a trial court's decision to grant or deny a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).

A defendant has a right to a neutral and detached judge and a trial court's examination of witnesses may not "pierce the veil of judicial impartiality." *People v McDonald*, 303 Mich App

---

jury formulations such as "I am pretty confident," which appear at least twice in the transcript.  An attorney's opinions are simply not relevant to the jury's determination of a case, and while not prejudicial here in the sense of requiring reversal, they might be in a different case. See, e.g., *People v Seals*, 285 Mich App 1, 24; 776 NW2d 314 (2009).

[6] We decline to categorize these failures to object as falling below the objective level of reasonableness because counsel could have opined that, because there was no harm in the questions, there was no point in objecting.  And regarding the other instances where there was no prosecutorial error, any objection would necessarily have been futile; counsel is not ineffective for failing to raise a futile objection. *Ericksen*, 288 Mich App at 201.

424, 437; 844 NW2d 168 (2013), citing *People v Davis,* 216 Mich App 47, 50; 549 NW2d 1 (1996).

> The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial. [*People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (quotation marks and citations omitted).]

However, as a general matter, "[d]isqualification on the basis of bias or prejudice cannot be established merely by repeated rulings against a litigant, even if the rulings are erroneous." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). Rather, "[a] showing of prejudice usually requires that the source of the bias be in events or information outside the judicial proceeding." *Id*.

Defendant cites several instances of perceived judicial partiality, but each is predicated on rulings the trial court made against him. First, on the morning of his trial, defendant asked to speak and stated that he wanted a new lawyer because his current counsel was ineffective by failing to list certain witnesses that defendant thought would be helpful. Defendant then started into what best could be described as his "legal" explanation for the request,[7] but the trial court interrupted to explain that defendant was not a lawyer and that his position was not valid in any event. The court therefore denied the request to substitute new counsel. Defendant states that the trial court did not let him continue his motion about witnesses. However, defendant's statement was about the performance of his attorney and the request to get new counsel, and the trial court responded to that request. Notably, defendant does not assert that the trial court should have appointed a new attorney at the commencement of his trial. Also, it is undisputed that the jury was not present during this exchange, so it was impossible for the jury to have been unduly influenced. See *Jackson*, 292 Mich App at 598.

Next, defendant takes issue with the trial court chiding defense counsel for asking questions too slowly. From reading the cold transcript, we are unable to tell how slow defense counsel was in questioning Browne. But the record shows that after the trial court noted how slow counsel was taking in questioning the witness, counsel acknowledged that he was "going through the notes that [he] made during [the witness's] direct testimony." Given counsel's admission, it seems that he was indeed taking quite a bit of time in conducting his examination of the witness. Defendant has offered nothing to show that the trial court's conduct was anything other than the court's exercise of its inherent authority "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006); see also MRE 611(a)(2) ("The court shall exercise

---

[7] Defendant, in pertinent part, stated, "I have no right to appeal. . . . I can only appeal with issues that are raised."

reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . avoid needless consumption of time").

Defendant also cites the trial court's admonishment of defense counsel when counsel attempted to impeach a witness with her preliminary examination testimony without knowing or identifying the page number from the preliminary examination transcript. The record shows that counsel had not marked the page number of the preliminary examination testimony, which was again causing a great amount of delay. But defendant cites no authority that requires a court to allow counsel to take as much time as he wants, especially when the time is for counsel to locate and identify a page number that he previously could have but has failed to mark. Once, again, this does not demonstrate bias against defendant or defense counsel but merely the court's obligation to run the proceedings in an efficient manner. See *Maldonado*, 476 Mich at 376; MRE 611(a)(2).

Defendant also relies on the trial court's denial of a request for an adjournment in the middle of trial as an example of bias. Defendant's trial counsel requested an adjournment to procure the testimony of the author of a police report. The trial court denied the adjournment because counsel had the opportunity to subpoena the officer prior to trial. Detective Hogan had testified that a Detective Myers had made a report about an individual who claimed to have dropped Edmond off at Boose's home around 8:00 p.m. on the night of the shooting. This fact could have supported the possibility that Edmond shot Cheeks. The trial court sustained the prosecutor's objection that questions about the contents of the police report were hearsay. The trial court's ruling on the prosecutor's objection appears to be correct. See *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App 243, 254; 805 NW2d 217 (2011) (stating that police reports generally are inadmissible hearsay); cf. MRE 803(8). Furthermore, defendant could not have circumvented the bar against hearsay by having the author of the police report testify because that author lacked first-hand knowledge of the statement contained in the police report, MRE 602. Accordingly, aside from trying to get the trial to conclude in a timely manner, it is beyond clear that subpoenaing the author of the police report would have been futile because the author properly would not have been permitted to testify regarding the report's contents. As such, the trial court did not demonstrate favoritism by denying defendant the opportunity to locate and present the testimony of a witness at the end of the trial, given that the witness was not on the witness list and would not have been able to provide the testimony that was desired. And in any event, as noted, adverse rulings, standing on their own, do not demonstrate judicial bias.

Defendant cites another instance of the trial court's conduct involving defendant's girlfriend, Angel Jackson. Jackson, who was called by the prosecution, had testified that she did not drive defendant in a vehicle owned by defendant's mother. The trial court dismissed the jury and then addressed the witness, stating that Jackson had been lying and warned her of the perils of committing perjury.[8] Jackson then said that she had been truthful, and defendant's trial

---

[8] The trial court stated:

> What I have listened to throughout this case, young lady, is people like yourself getting on the witness stand and lying through their teeth, so I want to advise you

counsel requested that the witness meet with an attorney. The trial court expressed the opinion that witnesses were lying in murder cases despite the consequences and told defendant's trial counsel that his comments were not directed at defendant or counsel, but to the witnesses. The witness requested to meet with the prosecutor, and the witness subsequently continued her testimony, which was consistent with her earlier trial testimony. Here, the trial court's statements, although harsh toward the witness, were not made in the presence of the jury. Thus, it was impossible for the comments to have unduly influenced the jury, which is the cornerstone of a judicial bias test. *Jackson*, 292 Mich App at 598.

Because there was nothing on the record to show that the trial court's conduct unduly influenced the jury, the trial court did not abuse its discretion in denying defendant's motion for a mistrial on the basis of judicial bias.[9]

Affirmed.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Jonathan Tukel

---

of something. Somebody needs to tell somebody – I am amazed. A person is killed, is dead, shot in the face and you get up here and lie. So, I want to advise you of something. There is a law in this state called perjury. . . . The last witness got up and did the same thing. Ms. Boose got up and did the same thing and now you are following along with them. I am fed up. I am tired. I want you to take a moment to reflect. Maybe you don't know, but I don't like it when people come in here and flat out lie.

[9] We need not admonish the trial judge about the perils of expressing opinions about a witness's truthfulness, as the trial judge is now retired.