*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 12, 2021

Plaintiff-Appellee,

v

No. 351885
St. Clair Circuit Court
LC No. 19-001757-FC

ZACHARY ALLEN HOLMAN,

Defendant-Appellant.

Before: RIORDAN, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

Defendant, Zachary Allen Holman, appeals as of right his jury-trial conviction of assault with intent to commit murder (AWIM), MCL 750.83. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to a term of 40 to 80 years in prison. Finding no error warranting reversal, we affirm defendant's conviction and sentence.

## I. BACKGROUND

Defendant's conviction arose from a nonfatal stabbing at a trailer park on the evening of July 2, 2019. Multiple witnesses to the stabbing, including the victim and defendant, testified at trial. Most of the relevant facts underlying defendant's conviction are undisputed, given his admission that he intentionally stabbed the victim, believing him to be someone else.

*Defendant's Request for New Trial Counsel.* About two weeks before trial, defendant requested that the trial court appoint new counsel to represent him, arguing that his assigned counsel had been ineffective in representing him during pretrial preparations. For example, defendant argued that his trial counsel was ineffective because she had declined to send the butcher knife that he had used to stab the victim for some type of forensic testing. The trial court indicated that this was a "straightforward case," that defendant's trial counsel was in charge of making strategic decisions related to the case, and that defendant had failed to demonstrate good cause warranting the appointment of new counsel. Furthermore, the trial court held that the appointment of substitute trial counsel only two weeks before trial would unreasonably disrupt the judicial process by delaying trial. Therefore, the trial court denied defendant's request for the appointment of new trial counsel.

-1-

*Jury Voir Dire.* On the first day of trial, the trial court stated that it would limit the parties' voir dire of "the initial panel" of prospective jurors "to 15 minutes per side," but it did not state or enforce any time limitation for voir dire of jurors who were *subsequently* seated, i.e., those seated following the exercise of challenges for cause or peremptory challenges. Moreover, because the prosecutor exceeded the 15-minute period when questioning the initial panel—evidently spending approximately 17 minutes on such voir dire—the trial court informed defense counsel that she could also "go a little bit over if she need[ed] to." Specifically, the trial court informed defense counsel that she would have "about 17 minutes or so if [she chose] to use them," but defense counsel replied: "I won't use them."

Shortly before the empaneled jurors were sworn, the trial court asked defense counsel whether she wished to exercise any challenges for cause, and she replied: "Pass for cause, your Honor." Thereafter, the trial court asked whether the defense wished to exercise any further peremptory challenges, and after requesting "a moment" to consider, defense counsel answered: "Defense is satisfied, your Honor." In other words, defendant's trial counsel declined to exercise any further peremptory challenges, and then she affirmatively indicated that the defense was "satisfied" with the empaneled jury.

*Theories of the Case.* At trial, the prosecutor's theory of the case was as follows: (1) on the day of the stabbing, while drinking with friends outside one of the homes in the trailer park, defendant was involved in a verbal confrontation with Kyle Vanreyendam, with whom he had also argued the day before; (2) during the confrontation, the men exchanged threats, and the intoxicated defendant threatened to kill Vanreyendam; (3) defendant subsequently left and walked to his girlfriend's nearby trailer, where he sent several text messages suggesting that he intended to kill Vanreyendam; (4) after retrieving an "eight inch butcher knife" from his girlfriend's house, defendant returned to the scene of the confrontation; (5) it had grown dark, and defendant mistook Justin Watson ("the victim") for Vanreyendam; (6) intending to kill Vanreyendam, defendant rushed up and stabbed the victim several times, inflicting three serious but nonfatal wounds and apologizing before fleeing the scene on foot; and (7) defendant was guilty of AWIM under a transferred-intent theory. The defense theory of the case was that, although defendant intentionally stabbed the victim, believing that he was stabbing Vanreyendam, he did so intending only "to injure or do great bodily harm," not with the specific intent to commit murder.

*Defendant's Testimony and Incriminating Statements.* Defendant indicated that on the evening of the stabbing, he and several others were drinking alcohol and consuming marijuana. Defendant claimed that he "had problems" with Vanreyendam in the past and that there was "bad blood" between the two because Vanreyendam was romantically interested in defendant's girlfriend. According to defendant, on the night of the stabbing, Vanreyendam claimed "that he was a member of the Latin Kings gang," and defendant "called him out" as a liar. Vanreyendam "got really angry," began to threaten defendant, and indicated that if defendant did not fight him, he was "going to get a gun and . . . come shoot the trailer up in the middle of the night."

Thereafter, defendant left the area, without "say[ing] anything to anybody," and walked back to his girlfriend's trailer. He began to send text messages to his girlfriend, "saying anything and everything" he could "to try to get [Vanreyendam] to leave." Defendant testified that he "really didn't want to go back over there because of the threats that were made, but at the same time [defendant] was worried about what [Vanreyendam] might do because [defendant] wouldn't

fight him." Although he admittedly sent text messages threatening Vanreyendam's life, defendant claimed that he was "quite intoxicated" and that he "had no intentions of actually hurting anybody at that point." He merely "wanted [Vanreyendam] to leave." Defendant further admitted, however, that he took a butcher knife from his girlfriend's home and decided to return to the site of his confrontation with Vanreyendam, claiming that he intended to "scare" his rival away. Defendant admitted knowing that the butcher knife he wielded that evening was a potentially deadly weapon.

When defendant arrived back at the scene, it was "very dark" and he "couldn't see a whole lot" in his intoxicated state. According to defendant, he saw "a group of people" standing around, but he "couldn't tell who was who or who was where." He approached the group, asked where Vanreyendam was, and thought that someone pointed at the victim. Turning to look toward the victim, whom he believed to be Vanreyendam, defendant saw him stand up from leaning against a car and reach toward his belt with one hand, and defendant "perceived that to be reaching for a gun." Defendant claimed that he believed that the other man was "trying to brandish a firearm," so he "immediately jumped on to him and stabbed him." Defendant admitted that he "attempted to stab him in the arms." As he turned and fled, the victim lowered his arms, and in attempting to stab him in the arm again, defendant stabbed him in the side.

After that, "[e]verybody started yelling," and upon taking "a little bit of a closer look at who it was," defendant realized that he had stabbed the wrong person. He looked at the wound on the victim's side, told him to call an ambulance, and said, "I'm sorry I didn't mean to do that." Defendant claimed that he placed the knife "on somebody's car" and left the scene, walking back to his girlfriend's house. He later attempted to go back to the scene to get the knife and "hide that piece of evidence," but it was gone because the car on which he had placed it had been driven away.

When police arrested defendant, they seized his cell phone. Detective Steve Surman subsequently search the cell phone and located approximately 55 text messages relevant to this case, which were sent to and from the cell phones of defendant and his girlfriend. Without objection, the text messages were introduced into evidence at trial. As relevant here, defendant sent his girlfriend the following text messages on the evening of the stabbing: (1) around 10:28 p.m., a message stating, " 'Myou [sic] guys better hide' Kyle" [i.e., Vanreyendam]; (2) also around 10:28 p.m., a message stating, "Immma [sic] show him what he really talking about"; (3) around 10:30 p.m., a message stating, in part, "Hide him or he dies . . . he tested me . . ."; (4) around 10:32 p.m., a message stating, "TE [sic] Kyle to go away. Other wise [sic] he WILL get hurt"; (5) around 10:36 p.m., a message stating, "He has to die"; and (6) also around 10:36 p.m., a message stating, "only way to preserve rspext [sic]."

Detective Surman also discovered text message sent between defendant and his mother on the evening in question, including texts sent after the stabbing incident, which seemingly demonstrated consciousness of guilt. For instance, around 11:50 p.m., defendant sent a message stating: "Even if I leave now if anybody actually did give my name they find me regardless. I [f***ed] up. If I have to pay the price I have to pay the price. Don't ever blame yourself. I made myself this way not you." Later, defendant sent additional messages indicating that he might "belong in prison," that he was hoping that the victim did not "snitch" on him, and that he only "showed mercy" to the victim when he heard people "yelling that that was the wrong guy."

*Depictions of the Victim's Scars at Trial.*  At trial, the victim was permitted, without objection, to step down from the witness box and show the jury the scars from the stab wounds he sustained.  Also without objection, the prosecutor introduced several photographs of the victim's postsurgical wounds.  When asked, the victim indicated that his scars had been caused (or enlarged), at least in part, by the surgical procedures he underwent, not just the initial stabbing.

*Evidence of Witness Bias.*  A responding police officer indicated that, when police first responded to the scene of the stabbing, none of the witnesses were cooperative, refusing to tell police who had stabbed the victim.  On the first day of trial, while cross-examining Deputy John Maxey, defendant's trial counsel inquired whether "the noncooperation" of the witnesses to the stabbing delayed the police investigation, and Deputy Maxey replied: "Yes, it did not help." Counsel followed up by asking Deputy Maxey: "And were any of those people charged with obstruction of justice—"  The question was interrupted when the prosecutor objected, arguing that it was irrelevant whether any of the witnesses were charged with any offenses related to the stabbing incident or the resulting police investigation.  When the trial court asked defense counsel for her response, she initially replied: "Well they can get the idea they weren't charged I'm sure. So I'm okay with it."  But she went on to argue that the matter was relevant to show that the police had "someone who impeded their investigation."  Following an off-the-record conference at the bench, the trial court sustained the prosecutor's objection on grounds of relevance and struck defense counsel's related question, instructing the jury not to consider that question or any response it might have perceived from Deputy Maxey.

Similarly, on the second day of trial, defendant's trial counsel asked defendant's girlfriend whether she had ever been "charged with anything because of" her refusal to cooperate with the police at the scene of the stabbing.  Before the witness answered, the prosecutor objected on grounds of relevance.  Following a bench conference, the trial court sustained the objection, struck defense counsel's question, and instructed counsel not to ask any similar questions of other witnesses during the trial.

*Vanreyendam's Nonappearance at Trial.*  During their investigation, police eventually learned that Vanreyendam had been present at the scene on the evening of the stabbing, but they were never able to locate him to question him in this matter.  Nevertheless, the prosecutor listed Vanreyendam as an expected witness on the initial witness list.  Outside of the jury's presence, the prosecutor called Detective Steve Rickert to testify about the prosecutor's efforts to locate Vanreyendam and secure his presence as a witness at trial.  Detective Rickert indicated that, in attempting to serve a subpoena on Vanreyendam, he "spoke to both his father and an aunt," who indicated that Vanreyendam's whereabouts were unknown.  They said that Vanreyendam "bounces between couches," and that they doubted that he would willingly contact police, given that "he has a current warrant for his arrest" arising from a parole violation.  Detective Rickert confirmed that Vanreyendam would be arrested if he had any contact with law enforcement.

Following Detective Rickert's testimony, defendant's trial counsel conceded that the prosecutor had seemingly shown "good cause" for the failure to produce Vanreyendam as a witness, given that he was missing and on the run, but counsel nevertheless asked for a formal ruling on the matter from the trial court.  After entertaining oral argument, the trial court held that the prosecutor had carried his burden of demonstrating that he had made reasonable efforts to produce Vanreyendam at trial.

The jury convicted defendant of AWIM and the trial court sentenced him as set forth earlier. This appeal followed.

## II. ANALYSIS

On appeal, defendant's appellate counsel raises several claims of error, and defendant raises several others in a Standard 4 brief. We analyze each in turn.

### A. JURY VOIR DIRE

Defendant first argues that the trial court abused its discretion by "limiting the entirety of attorney voir dire to 15 minutes per side," which "prevented defense counsel from adequately questioning prospective jurors to discover any biases or prejudices that might have warranted a challenge for cause or a peremptory challenge."

To the extent that defendant asserts that the parties were afforded "only 15 minutes to conduct the voir dire" during jury selection, he misstates the record. As stated above, the trial court stated that it would limit the parties' voir dire of "the initial panel" of prospective jurors "to 15 minutes per side," but it did not state or enforce any such time limitation for voir dire of jurors who were *subsequently* seated, i.e., those seated following the exercise of challenges for cause or peremptory challenges. Moreover, the trial court informed defense counsel that she would have "about 17 minutes or so if [she chose] to use them," and defense counsel replied: "I won't use them."

We conclude that defendant has waived appellate review of this issue because his trial attorney waived any error—not once, but twice. Immediately before the jury was empaneled, defendant's trial counsel declined to exercise any further peremptory challenges, and she affirmatively indicated that the defense was "satisfied" with the jury. By failing to exhaust defendant's peremptory challenges, his trial counsel waived the current claim of error, and she also waived it by expressing satisfaction with the empaneled jury. See *People v Rose*, 268 Mich 529, 531; 256 NW 536 (1934) (holding that, even if the trial court "erroneously restricted . . . the examination of jurors prior to their being sworn to try the case, such error is waived if plaintiff in error fails to exhaust his peremptory challenges," and further holding that "[i]f the objecting party afterwards expresses himself as satisfied with the jury, he thereby waives the error."). Waiver "extinguishes any error and precludes defendant from raising the issue on appeal." *People v Carter*, 462 Mich 206, 209; 612 NW2d 144 (2000).

### B. CROSS-EXAMINATION REGARDING WITNESS BIAS

Defendant next argues that the trial court abused its discretion by precluding his trial counsel from questioning defendant's girlfriend and Deputy Maxey "as to whether or not others were charged with anything involving this case, specifically obstruction of justice for lying to the police during the investigation." Defendant argues that the trial court erred by concluding that such evidence was not relevant proof of potential witness bias under MRE 401. Defendant also argues that the trial court's error deprived him of his right to confront the witnesses against him, which includes the right to "full cross-examination of all witnesses."

To preserve an issue regarding the exclusion of evidence, the proponent of such evidence must make an offer of proof, unless "the substance of the evidence . . . was apparent from the context within which questions were asked." *People v Grant*, 445 Mich 535, 545; 520 NW2d 123 (1994), quoting MRE 103(a)(2). Although defendant did not make an offer of proof after the trial court sustained the prosecutor's objections to the disputed testimony, it appears from the context in the record that the leading questions asked by defendant's trial counsel were an attempt to elicit testimony about whether any witnesses to the stabbing were charged with obstruction of justice for refusing to cooperate with the police investigation. Thus, this issue is preserved with respect to the trial court's exclusion of evidence. See *People v Snyder*, 462 Mich 38, 43; 609 NW2d 831 (2000). Because defendant raised no argument concerning the Confrontation Clause in the trial court, however, to the extent that defendant now argues that the trial court's exclusion of the disputed testimony violated his constitutional rights to confront and fully cross-examine the witnesses against him, this issue is unpreserved. See *People v Jackson*, 292 Mich App 583, 594; 808 NW2d 541 (2011).

"We review for an abuse of discretion a trial court's decision to admit or exclude evidence, while reviewing de novo any preliminary legal questions regarding admissibility. An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Bass*, 317 Mich App 241, 255-256; 893 NW2d 140 (2016) (cleaned up). Although the "admission or exclusion of evidence because of an erroneous interpretation of law is necessarily an abuse of discretion," *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016), a "trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion," *Bass*, 317 Mich App at 256. "Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights." *Jackson*, 292 Mich App at 594.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "Evidence need not be directed at an element of the offense or a defense to be material." *People v McGhee*, 268 Mich App 600, 637; 709 NW2d 595 (2005). "A witness's bias is always relevant," and a criminal defendant "is entitled to have the jury consider any fact that may have influenced the witness' testimony." *Id*. (cleaned up). Under MRE 402, all relevant evidence is admissible, and evidence which is not relevant is not admissible. Moreover, under MRE 611(c), "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." The trial court may, however, "limit cross-examination with respect to matters not testified to on direct examination," MRE 611(c), and "the trial court has wide discretion regarding admissibility of bias during cross-examination under MRE 611," *People v Layher*, 464 Mich 756, 765; 631 NW2d 281 (2001).

In this case, the trial court erred by concluding that it was not relevant whether any of the trial witnesses were charged with any crimes—including obstruction of justice—for their initial failure to cooperate with the police at the scene of the stabbing. "A proponent's attempt to discredit a witness' testimony by showing that the witness may be biased in favor of, or against, a party or witness, is highly relevant." *Id*. at 768. Here, evidence that one or more of the prosecutor's witnesses had been charged with—or threatened with charges—regarding their noncooperation with the police was relevant concerning the credibility and potential bias of such witnesses, and evidence that such witnesses had *not* been charged or threatened with charges would have been relevant for those same purposes. In other words, such evidence was relevant to whether the

witnesses at trial had a motive to testify untruthfully, and the trial court erred by concluding otherwise. Thus, the exclusion of the disputed testimony for lack of relevance necessarily constituted an abuse of discretion. See *Elher*, 499 Mich at 21.

Even so, defendant is not entitled to appellate relief on this basis. Under MRE 103(a), "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Under the harmless-error rule set forth by MCL 769.26, defendant is only entitled to reversal if he carries his burden of demonstrating "that it is more probable than not that the error was outcome determinative." See *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).

"The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Jackson*, 292 Mich App at 588. Defendant has failed to carry his burden of demonstrating that the trial court's disputed ruling was outcome-determinative. Although evidence of bias is usually highly relevant because it helps the jury to determine a witness's credibility, in this case, defendant *admitted* that he intentionally stabbed the victim several times with a butcher knife, and he also admitted to having threatened Vanreyendam's life—several times—before mistakenly stabbing the victim. Indeed, after the stabbing, defendant sent a text message indicating that he had only shown the victim "mercy" when he realized that he was attacking the wrong person. Thus, there was no genuine dispute on whether the prosecutor's witnesses were fabricating their testimony about the stabbing.

Moreover, the principal issue at trial was defendant's intent and the witnesses' credibility was not critical to resolving that issue. At trial, the prosecutor argued that the principal evidence supporting a finding that defendant intended to kill the victim was defendant's own text messages, defendant's admissions that he returned to the scene armed with a knife because he felt threatened by Vanreyendam and wanted to eliminate that threat, and the manner in which defendant attacked the victim with the knife. In other words, the jury's determination of defendant's intent was not highly dependent on the credibility of the other witnesses.

Given the overwhelming evidence of defendant's guilt, and the minimal importance of witness credibility in resolving the principal issue of defendant's intent, defendant has failed to demonstrate that the trial court's exclusion of the disputed evidence was outcome-determinative. Therefore, his claim of evidentiary error fails under harmless-error review.

For essentially those same reasons, defendant's unpreserved argument under the Confrontation Clause necessarily fails. Even assuming that the trial court's exclusion of the disputed evidence *did* plainly violate his right to confront the witnesses against him at trial, on this record, defendant has failed to demonstrate the requisite prejudice for relief under plain-error review because it was not outcome determinative. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## C. OFFENSE VARIABLES

Defendant next argues that the trial court plainly erred at sentencing in its assessment of Offense Variables (OVs) 4 and 10. Defendant failed to raise these purported scoring errors in the trial court, and he did not raise them in a motion to remand in this Court. Thus, this issue is

unpreserved, see *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012), and subject to plain-error review, see *People v Odom*, 276 Mich App 407, 411; 740 NW2d 557 (2007).

As defendant admits in his brief on appeal, his unpreserved claims of sentencing error do not affect the applicable sentencing guidelines range. The sentencing offense here was AWIM, which is a Class A offense. MCL 777.16d. Given defendant's total prior record variable score of 74—which he does not challenge here—and his total OV score of 125, defendant's minimum guidelines range was 225 to 375 months or life in prison. MCL 777.62. Because defendant was sentenced as a fourth-offense habitual offender, his guidelines range was increased to 750 months or life. See MCL 777.21(3)(c). Even deducting the 10 points he was assessed for OV 4 and the 15 points he was assessed for OV 10 from his total OV score of 125, he would nevertheless retain a total OV score of 100, and would remain at OV Level VI with the same resulting minimum guidelines range. MCL 777.62. Thus, defendant is not entitled to resentencing. See *People v Francisco*, 474 Mich 82, 91 n 8; 711 NW2d 44 (2006).

## D. PROPORTIONALITY

Defendant next argues that, although his 40-year minimum sentence is within the appropriate guideline ranges, and although existing precedent indicates that this Court must affirm such a sentence under MCL 769.34(10), we should nevertheless conclude that his sentence is disproportionate under the *Milbourn* proportionality standard. Defendant's argument is directly contrary to *People v Armisted*, 295 Mich App 32, 52; 811 NW2d 47 (2011):

> Under the statutory sentencing guidelines, this Court *must affirm* a minimum sentence that falls within the appropriate guidelines range "absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." MCL 769.34(10); see also *People v Kimble*, 470 Mich 305, 310-311, 684 NW2d 669 (2004). Conspicuously absent from Michigan's current sentencing statutes is any mention of the principle of proportionality or any discussion of factors that would render an otherwise proper sentence disproportionate. [Emphasis added.]

In *People v Schrauben*, 314 Mich App 181, 196 n 1; 868 NW2d 173 (2016), this Court held that our Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), "did not alter or diminish MCL 769.34(10)." Because these decisions have not been reversed or modified by our Supreme Court or a special conflict panel of this Court, they are binding here. See MCR 7.215(J)(1). Accordingly, we reject defendant's claim of error.

## E. SUBSTITUTE COUNSEL

Defendant next argues that the trial court abused its discretion by denying his pretrial request for new counsel. We review for an abuse of discretion the trial court's decision denying a motion for substitution of appointed counsel. *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015). We review for clear error any related factual findings. *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015).

In *McFall*, 309 Mich App at 382-383, this Court stated many of the essential legal principles that are relevant here:

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Substitution of counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest. A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient. [Cleaned up.]

In this case, the trial court found that the appointment of substitute counsel would unreasonably disrupt the judicial process by delaying trial. Given that defendant was charged with a serious felony, the strength of the evidence against him, and that defendant's request for the appointment of substitute counsel occurred just 14 days before trial began, we find no clear error with the trial court's conclusion that the appointment of substitute counsel would have unduly delayed these proceedings. Had new counsel been appointed, the trial court almost certainly would have been forced to adjourn trial to permit defendant's new counsel to become familiar with the case and prepare for trial.

The trial court also concluded that defendant had failed to demonstrate good cause warranting the appointment of new counsel. Although a legitimate difference of opinion concerning a *fundamental* trial tactic may be good cause for the appointment of substitute counsel, in this case defendant indicated that he disagreed with his appointed counsel concerning specific strategic matters—such as whether to retain experts to perform forensic testing of some sort on the butcher knife—not the fundamental defense strategy. Decisions involving "professional judgment and trial strategy . . . are matters entrusted to the attorney," and thus the client's disagreement with an appointed attorney concerning such matters does "not warrant appointing substitute counsel." *Id*. In light of the strength of the evidence against defendant, including his out-of-court statements admitting that he had stabbed the victim, defense counsel's decision not to request forensic testing of the butcher knife used in the stabbing was a prudent strategy, and it was one that involved the exercise of professional judgment. Had such forensic testing revealed inculpatory evidence, it would have served only to strengthen the prosecutor's case. On this record, there was no reason for counsel to expect that forensic testing would have revealed any *exculpatory* evidence—again, defendant admitted that he stabbed the victim with a butcher knife, and he apologized to the victim for doing so in the presence of several witnesses. Therefore, the trial court's decision did not constitute an abuse of discretion.

## F. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, defendant raises several claims of ineffective assistance of counsel. Because no *Ginther* hearing took place in the trial court, "our review is limited to the facts on the

record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).[1] "Whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact"—if any exist—"and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).

The "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland*, 466 US at 689. "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy." *Id.* at 242-243. "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. "The inquiry into whether counsel's performance was reasonable is an objective one and requires the reviewing court to determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (cleaned up). Accordingly, the reviewing court must consider the range of potential reasons that counsel might have had for acting as she did. *Id*.

Defendant first argues that his trial counsel performed ineffectively by failing to raise a probable-cause challenge concerning the search warrant that was issued for defendant's cell phone. But defendant has not provided this Court with the basic materials necessary to consider this issue—a copy of the search warrant in question or any record evidence concerning the affidavit or evidence upon which that warrant was issued. See *United States v Leon*, 468 US 897, 926; 104 S

---

[1] In the text of his Standard 4 brief, which is not supported by any affidavit or offer of proof, defendant now requests a remand for a *Ginther* hearing. Because defendant did not file a motion to remand under MCR 7.211(C)(1) and has not otherwise factually supported his various claims, we deny his remand request. See *Bass*, 317 Mich App at 276 n 12.

Ct 3405; 82 L Ed 2d 677 (1984). Nor has defendant cited any record evidence concerning whether the "fruits" of the search of his cell phone (i.e., his inculpatory text messages) would have been discovered through an independent source—voluntary disclosure by those with whom defendant texted on the evening in question—such that they would not have been subject to suppression. See *Utah v Strieff*, ___ US ___; 136 S Ct 2056, 2061; 195 L Ed 2d 400 (2016) (explaining that "the independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source"). Finally, defendant has not presented any record evidence suggesting that, even if the search warrant itself *was* improperly issued, the fruits of the ensuing search would not have been admissible under the "good-faith reliance" exception to the exclusionary rule. See *Leon*, 468 US at 911, 913. Thus, defendant has failed to establish the factual predicate for his ineffective-assistance claim, which necessarily fails as a result.

Defendant next argues that his trial counsel was ineffective because she failed to investigate or attempt to request the appointment of "a medical expert to explain the injuries and how they were caused," and "a DNA expert to dispute the weapon said to be used in the crime." Counsel's decision whether to retain an expert witness is a matter of trial strategy. *Bass*, 317 Mich App at 279. Given the testimony of several witnesses that defendant stabbed the victim, and given that defendant admitted having done so using a butcher knife taken from his girlfriend's home, there was no dispute at trial that defendant *had* done so. Nor has defendant presented any record evidence demonstrating that an analysis by medical experts or DNA experts would have yielded any exculpatory evidence in this case. In short, defendant has failed to rebut the strong presumption that trial counsel employed sound trial strategy in this regard, and he has also failed to demonstrate that, but for counsel's failure to retain the disputed experts, there is a reasonable probability that the outcome of the trial would have been different.

Defendant further argues that, in light of his testimony that he stabbed the victim under the belief that the victim was reaching for a gun, trial counsel should have requested the model jury instructions for self-defense. "As a general rule, the killing of another person in self-defense by one who is *free from fault* is justifiable homicide if, under all the circumstances, he honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is *necessary* for him to exercise deadly force." *People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002) (emphasis added). "The necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example . . . by utilizing an obvious and safe avenue of retreat," and "[o]ne who is involved in a physical altercation in which he is a willing participant . . . is *required* to take advantage of any reasonable and safe avenue of retreat before using deadly force against his adversary, should the altercation escalate into a deadly encounter." *Id*. at 119-120. Moreover, "an act committed in self-defense but . . . in which defendant was the initial aggressor does not meet the elements of lawful self-defense." *People v Heflin*, 434 Mich 482, 509; 456 NW2d 10 (1990). And a defendant may "be held legally accountable as an aggressor for responsive conduct by another that is reasonably attributable to appellant's own conduct." *People v Townes*, 391 Mich 578, 592; 218 NW2d 136 (1974). That is, a defendant who "is engaged in the commission of an act which is wrongful" may not legally employ deadly force to repel an assault that was provoked by the very "character" of his wrongful act. *Id*. at 593 (cleaned up).

In this case, defendant admitted that he retrieved a butcher knife from his girlfriend's home and went to the neighbor's trailer specifically intending to frighten Vanreyendam by brandishing the knife, and he also indicated that he approached the wrong person—the unarmed victim—with the knife instead. In other words, defendant was admittedly the initial aggressor here; he admittedly sought out a confrontation with Vanreyendam rather than fleeing from it; and he attacked the wrong person. Thus, even assuming that the victim *had* reached for a weapon, defendant would not have been entitled to a self-defense instruction because it was his own conduct that provoked a reaction by the victim. The aggressor who looms up out of the night and brandishes a butcher knife at an unsuspecting, innocent victim should not be heard to complain that, in reaction to the *victim's* efforts at self-defense, the aggressor was forced to defend himself using his already-brandished knife. On this record, we cannot conclude that defendant's trial counsel employed ineffective strategy by instead focusing the defense on the intent element for AWIM.

Defendant also argues that his trial counsel performed ineffectively by failing to request that the trial court instruct the jury under M Crim JI 5.12 ("Prosecutor's Failure to Produce Witness") with regard to "[a] main witness, and a person referred to throughout the trial," who "did not show up for trial." Although defendant fails to name the nontestifying witness in question, it seems clear that this argument concerns Vanreyendam. In light of the trial court's finding that the prosecutor had exercised due diligence in attempting to locate Vanreyendam—a fugitive—and subpoena him, any request to instruct the jury with M Crim JI 5.12 would have been futile. See *People v Everett*, 318 Mich App 511, 527; 899 NW2d 94 (2017) ("A missing witness instruction should be given if the trial court finds a *lack* of due diligence on the part of the prosecution in seeking to produce an endorsed witness.") (emphasis added). We reject defendant's argument because trial counsel is not ineffective for failing to make a futile motion. *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017).

Defendant further argues that his trial counsel ought to have subpoenaed two unspecified individuals as defense witnesses, whose "names were mentioned consistently by almost every witness as having been present during the crime." Aside from the fact that defendant fails to identify the two individuals whom he believes should have been subpoenaed, he has failed to present any evidence indicating that those individuals would have appeared at trial, any evidence to establish the substance of the testimony they would have offered, or any explanation of how such testimony might have altered the outcome of the trial. In other words, defendant has failed to establish the factual predicate for his instant claim of ineffective assistance, and the claim necessarily fails as a result.

Next, defendant argues that his trial counsel performed ineffectively by failing to object to the prosecutor's introduction of several photographs of the victim's postsurgical scars following the stabbing. Even assuming that counsel might have successfully objected to those photographs on the basis that they were more unfairly prejudicial than probative under MRE 403, we are nevertheless unpersuaded that defendant has demonstrated a reasonable probability that the result of the trial would have been different but for the introduction of the disputed photographs.

At trial, the victim admitted that the scars depicted in the disputed photographs had been caused, at least in part, by surgical procedures he underwent, not just by the initial injuries from the stabbing incident. Furthermore, evidence of the *extent* of the victim's injuries was not

-12-

particularly important to the prosecutor's case. Although the extent of those injuries might have been circumstantial evidence of defendant's intent, there was overwhelming *direct* evidence of that intent here—i.e., defendant's repeated threats against Vanreyendam's life. Also, the disputed photographs were cumulative, given that the victim was permitted to show the jury his scars in person at trial, and defendant raises no claim of error in that regard. Thus, defendant has failed to carry his burden of showing the requisite prejudice for relief. In addition, given that the disputed photographs were cumulative and not particularly probative, counsel could have reasonably decided, as a matter of trial strategy, that the benefit to be gained by an objection was outweighed by the attendant danger of alienating the jury or highlighting the importance of the photographs in the minds of the jurors. See *People v Reed*, 449 Mich 375, 400; 535 NW2d 496 (1995).

Finally, defendant argues that his trial counsel performed deficiently by failing to move to withdraw from representing defendant following a breakdown in the attorney-client relationship of which defendant complained at the pretrial hearing. At that hearing, the trial court expressly *denied* defendant's request to appoint substitute counsel, reasoning that there was "no basis for [counsel] to be discharged," and concluding that defendant's request was an attempt to delay trial and that defendant had failed to establish "that the attorney/client relationship ha[d] irretrievably broken down." Defendant cites no record evidence indicating that, despite the trial court's express denial of his motion to appoint substitute counsel, it nevertheless would have permitted defense counsel to withdraw from the representation had she filed her own motion requesting such relief. Therefore, defendant has failed to carry his burden of rebutting the strong presumption that counsel performed effectively.

## G. NONVISIBLE RESTRAINTS

In his Standard 4 brief, defendant argues that the trial court committed an abuse of discretion constituting plain error by requiring him to wear a "non-visible brace, put on the leg under the pants," at trial in the presence of the jury. To preserve a due-process challenge concerning shackling, a defendant must object to the procedure in the trial court. *People v Solomon*, 220 Mich App 527, 532; 560 NW2d 651 (1996). Defendant raised no such objection below, and thus his unpreserved claim of error is subject to plain-error review. See *Carines*, 460 Mich at 752-753. We perceive no plain error warranting reversal.

In *Deck v Missouri*, 544 US 622, 633; 125 S Ct 2007; 161 L Ed 2d 953 (2005), the United States Supreme Court held, on due-process grounds, that

> courts cannot routinely place defendants in shackles or other physical restraints *visible to the jury* during the penalty phase of a capital proceeding. The constitutional requirement, however, is not absolute. It permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling. In so doing, it accommodates the important need to protect the courtroom and its occupants. But any such determination must be case specific; that is to say, it should reflect particular concerns, say, special security needs or escape risks, related to the defendant on trial. [Emphasis added.]

-13-

To begin with, although defendant cites nonbinding[2] authority extending *Deck*'s due-process protections to restraints in the form of "stun belts,"[3] which are evidently "worn underneath the prisoner's clothing . . . not readily visible to the jury," *United States v Durham*, 287 F3d 1297, 1305 (CA 11, 2002), defendant cites no *binding* authority to support his argument that the rule of law from *Deck* applies to nonvisible restraints. Nor are we aware of any such authority. On that basis alone, defendant has failed to establish that the trial court committed a *plain* error by requiring him to wear nonvisible restraints. See *Duray Dev, LLC v Perrin*, 288 Mich App 143, 162; 792 NW2d 749 (2010).

In any event, defendant's argument also fails under plain-error review because it is unsupported by record evidence. Defendant argues that he was deprived of his due-process right to a fair trial because he was allegedly forced, at trial, to wear a "non-visible brace, put on the leg under the pants," in the presence of the jury. Defendant alleges that, although the brace was not visible to the jurors, it "locks" and "makes a loud clicking sound" whenever the wearer stands up, causes the wearer "to have a severe limp," and "requires the wearer to pull a lever in order to sit down, causing them to bend over to reach it." Defendant further alleges that, in this case, it would have been "impossible" for the jurors not to notice the restraints in question because he "was forced to walk to and from the witness stand" in the jury's presence, and he was also instructed to "step down during his testimony . . . to answer questions from the Prosecutor, and to demonstrate [his] actions" on the night of the stabbing while "mere feet away from the jury."

Defendant's argument rests entirely on the unsupported factual allegations in his Standard 4 brief. He cites no record evidence indicating that he was required to wear a brace at all, let alone any evidence indicating that the brace in question had characteristics that would have made it noticeable to the jury. Thus, defendant has failed to satisfy any of the basic elements of the *Carines* plain-error test. See *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000) (holding that appellants bear "the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal [i]s predicated"); *Carines*, 460 Mich at 763 ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.").

## H. PHOTOGRAPHS

Finally, in his Standard 4 brief, defendant argues that the trial court committed an abuse of discretion constituting plain error by permitting the prosecutor to introduce the photographs depicting the victim's postsurgical wounds. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Because

---

[2] It is well-settled that, like all state courts, this Court is not bound by decisions of lower federal courts, though it may consider such decisions as persuasive precedent. See, e.g., *People v Patton*, 285 Mich App 229, 234; 775 NW2d 610 (2009).

[3] Specifically, defendant cites *United States v Waagner*, 104 Fed Appx 521, 526-527 (CA 6, 2004), *United States v Durham*, 287 F3d 1297, 1304 (CA 11, 2002), and *Gonzalez v Pliler*, 341 F3d 897, 901 (CA 9, 2003).

defendant did not object to the introduction of the disputed photographs below, this unpreserved issue is "reviewed for plain error affecting the defendant's substantial rights." See *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

Specifically, defendant argues that the trial court should have excluded the disputed photographs as cumulative or more unfairly prejudicial than probative under MRE 403, and he further argues that the court's failure to do so undermined "the fairness, and the integrity of the trial." Although the disputed photographs were arguably objectionable under MRE 403, we are not persuaded that the trial court committed plain error by failing to raise such an objection sua sponte, and we conclude that defendant has failed to demonstrate the requisite prejudice to receive relief under plain-error review in any event.

MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." It bears emphasis that MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

It is something of a close question whether the photographs should have been excluded under MRE 403. At trial, the victim admitted that the scars depicted in the disputed photographs had been caused, at least in part, by surgical procedures he underwent, not only by the initial injuries from the stabbing incident. Evidence of the *extent* of the victim's injuries, however, was not particularly probative here. Although the extent of those injuries might have been circumstantial evidence of defendant's intent, there was overwhelming direct evidence of that intent—i.e., defendant's repeated threats against Vanreyendam's life. And the disputed photographs were cumulative, given that the victim was permitted to show the jury his scars in person at trial. After carefully reviewing the disputed photographs in light of the record evidence at trial, we are inclined to believe that their limited probative value was arguably outweighed by the danger of unfair prejudice and that, in any event, they could have been excluded as needlessly cumulative.

Even so, we are not persuaded that the trial court committed a plain (i.e., clear or obvious) abuse of discretion in this regard, given that the court was never actually called upon to *exercise* any discretion concerning this issue. "[T]here is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right." *Napier v Jacobs*, 429 Mich 222, 228-229; 414 NW2d 862 (1987) (cleaned up). "A criminal defendant is entitled to a neutral and detached magistrate" at trial, *Jackson*, 292 Mich App at 597 (cleaned up), and "in our adversarial system, the litigants frame the issues and present them to the court," *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 383; 775 NW2d 618 (2009). Furthermore, it is axiomatic that there are times when defense counsel may, for valid strategic reasons, choose not to raise a meritorious objection to evidence introduced by the prosecution. See, e.g., *Reed*, 449 Mich at 400.

As noted, the disputed photographs were cumulative and not particularly probative. Accordingly, an objection to their introduction might well have underscored their significance in

-15-

the minds of the jurors—or alienated the jury—with little potential benefit for the defense. Moreover, given the victim's testimony that the scars depicted in the photographs had been caused, at least in part, by surgery—not by defendant's conduct—defense counsel might have reasonably believed that the risks of objecting to such evidence outweighed any potential benefit that the defense might reap. Given that a reasonable defense attorney might have made a legitimate strategic decision not to object, we cannot conclude that the trial court plainly erred by failing to nevertheless raise such an objection on its own initiative, thereby superimposing the court's strategic views over those of defense counsel.[4]

Regardless, even assuming arguendo that the trial court erred by not excluding sua sponte the disputed photographs under MRE 403, defendant has failed to carry his burden of demonstrating the requisite prejudice under the *Carines* plain-error test. Again, the disputed photographs were cumulative and not particularly probative, and the evidence of defendant's guilt was overwhelming. For those reasons, we are not persuaded that the introduction of the disputed photographs was outcome-determinative. See *People v Rodriquez*, 216 Mich App 329, 332; 549 NW2d 359 (1996) ("Because the . . . testimony was mere cumulative evidence, we hold that the admission of this testimony did not prejudice defendant.").

Affirmed.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Brock A. Swartzle

---

[4] We are aware that reviewing courts must be cautious not to conflate the plain-error and ineffective-assistance analyses, *People v Randolph*, 502 Mich 1, 21; 917 NW2d 249 (2018), and we do not do so here. Rather, we merely recognize that, when a trial court raises an objection for the defense sua sponte to prevent what the court perceives as plain error, it may inadvertently undermine defense counsel's valid strategic decision *not* to raise such an objection.